IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| BRIDGESTONE/FIRESTONE NORTH AMERICA TIRE, L.L.C., a Delaware limited liability company, | ) ) ) ) | 2 CA-CV 2003-0009 DEPARTMENT B |
| | ) | O P I N I O N |
| Plaintiff/Appellee, | ) ) | |
| v. | ) ) | |
| DIONICIO NARANJO and MARTHA MONTAÑO, husband and wife; ZULEMA NARANJO, a minor child; and LIZETTE NARANJO, a minor child, | ) ) ) ) ) | |
| Defendants/Appellants. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20015988

Honorable Lina S. Rodriguez, Judge

AFFIRMED

___

Fennemore Craig
  By Timothy Berg, Christopher L. Callahan,
  and Darcy R. Renfro                                                      Phoenix
                                                     Attorneys for Plaintiff/Appellee

Law Offices of Richard D. Grand
  By Richard D. Grand                                                        Tucson

     and

Copple, Boehm & Murphy, P.C.
  By Steven D. Copple and Scott E. Boehm                                    Phoenix
                                                  Attorneys for Defendants/Appellants

P E L A N D E R, Presiding Judge.

¶1        In this personal injury and wrongful death action, appellants Dionicio Naranjo, Martha Montaño, and Zulema and Lizette Naranjo (the Naranjos) appeal from the trial court's summary judgment in favor of appellee Bridgestone/Firestone North America Tire, L.L.C.  The trial court ruled that the Naranjos' recovery of full, compensatory damages in their prior action against A.P.S. Rent-A-Car & Leasing, Inc. precluded their claims for compensatory and punitive damages against Bridgestone in this separate action arising from the same accident.  Based on satisfaction of judgment and collateral estoppel principles as well as public policy grounds, we affirm.

## BACKGROUND

¶2        In reviewing a summary judgment, we generally view the facts and inferences therefrom in the light most favorable to the nonmoving party.  *Link v. Pima County*, 193 Ariz. 336, ¶12, 972 P.2d 669, ¶12 (App. 1998).  The parties, however, agree that the pertinent facts are not in dispute.  Dionicio rented a van from A.P.S.  He, his wife Martha, and their children Zulema and Lizette were injured when a tire on the van suddenly failed, causing the van to roll over and crash.  Another child, Araceli Naranjo, was killed in the accident.  The Naranjos originally sued A.P.S., the company that had rented the van to them, alleging negligence and strict liability in tort.  They did not name Bridgestone, the tire's manufacturer, as a defendant in that action and, in fact, opposed A.P.S.'s motion to join Bridgestone as a third-party defendant.

¶3        After a seven-day trial, a jury awarded $9,539,838 in compensatory damages to the Naranjos.  In response to a special interrogatory, the jury found that seventy percent of the "verdict [was] based upon Plaintiffs' claims of negligence" and thirty percent on their "claims of

2

product liability." The verdict was reduced to a formal judgment. A.P.S. paid the entire damage award, plus interest, and the Naranjos filed a satisfaction of judgment with the court.

¶4 While the Naranjos' action against A.P.S. was pending, Bridgestone filed this case against the Naranjos and A.P.S., seeking a declaratory judgment that it was not obligated to indemnify A.P.S. for any damages awarded to the Naranjos. In response, the Naranjos filed a counterclaim, alleging claims for negligence and strict product liability against Bridgestone based on the defective tire. The Naranjos requested compensatory and punitive damages. Bridgestone moved to dismiss the counterclaim, arguing the Naranjos had impermissibly split their cause of action. Before the trial court could address that motion, the jury in the original case returned the aforementioned verdict in favor of the Naranjos.

¶5 After A.P.S. paid the ensuing judgment, Bridgestone moved for summary judgment on the Naranjos' counterclaim, arguing that collateral estoppel and satisfaction of judgment precluded their claims against Bridgestone. The trial court ultimately ruled that A.P.S.'s satisfaction of the judgment in the first case had discharged Bridgestone from any liability to the Naranjos arising from the same accident. The court granted Bridgestone's motion and entered judgment in its favor on the Naranjos' counterclaim, pursuant to Rules 54(b) and 56(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 2. This appeal followed.

## DISCUSSION

¶6 The Naranjos argue the trial court erroneously granted summary judgment based on outdated case law that has effectively been abrogated by A.R.S. § 12-2506.[1] We review a grant

---

[1]In their opening brief, the Naranjos contend *West v. State*, 203 Ariz. 546, 58 P.3d 28 (App. 2002), was wrongly decided and is not dispositive of this appeal. Shortly after that brief was filed, however, our supreme court ordered the *West* opinion depublished. *West v. State*, 204

3

of summary judgment de novo. *Liristis v. Am. Family Mut. Ins. Co.*, 204 Ariz. 140, ¶6, 61 P.3d 22, ¶6 (App. 2002). A motion for summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990). We also review de novo questions of statutory interpretation. *Steer v. Eggleston*, 202 Ariz. 523, ¶16, 47 P.3d 1161, ¶16 (App. 2002).

**¶7**        "Under the common law doctrine of joint and several liability, if two or more actors together caused an injury to the victim, each was liable for the full amount of the victim's injuries." *Herstam v. Deloitte & Touche, LLP*, 186 Ariz. 110, 114, 919 P.2d 1381, 1385 (App. 1996). In 1987, the legislature abolished joint and several liability in Arizona. § 12-2506(A), (D). Pursuant to that statutory change, "[i]n an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint." § 12-2506(A). Therefore, in Arizona, "each tortfeasor [is] responsible for paying for his or her percentage of fault *and no more.*" *Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991); *see also City of Tucson v. Fahringer*, 164 Ariz. 599, 603 n.9, 795 P.2d 819, 823 n.9 (1990).

## I.  Satisfaction of judgment

**¶8**        In granting Bridgestone's motion for summary judgment, the trial court relied on the doctrine of satisfaction of judgment, citing *State v. Superior Court*, 140 Ariz. 365, 681 P.2d 1384 (1984). Under that doctrine, if one joint tortfeasor satisfies a judgment obtained by the

---

Ariz. 484, 65 P.3d 433 (2003). Both parties acknowledge, therefore, that *West* has no precedential value on any issue in this appeal. *See Galati v. America West Airlines, Inc.*, 205 Ariz. 290, ¶14, 69 P.3d 1011, ¶14 (App. 2003).

plaintiff, all other tortfeasors are discharged from liability, and the plaintiff has no further cause of action. *See id.* at 366, 681 P.2d at 1385 ("[A] satisfaction of judgment against one tortfeasor extinguishes a cause of action against another tortfeasor for the same harm."); *Rager v. Superior Coach Sales & Serv.*, 110 Ariz. 188, 191, 516 P.2d 324, 327 (1973) ("[A] plaintiff can have but one satisfaction of a joint wrong."); *Edmond v. Fairfield Sunrise Village, Inc.*, 132 Ariz. 142, 142, 644 P.2d 296, 296 (App. 1982) ("[T]he satisfaction of judgment against one tortfeasor preclude[s] a subsequent action against another joint tortfeasor arising out of the same accident."); Dan B. Dobbs, *The Law of Torts* § 388, at 1082 (2001) ("When a defendant fully pays a judgment for all of the plaintiff's damages, the plaintiff's claim is satisfied and he has no further claim for the same injury."). "It is obvious that this rule is equitable in its nature, and that its purpose is to prevent unjust enrichment." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 48, at 330 (5th ed. 1984) (footnote omitted).

¶9        Noting that the Naranjos had alleged the same injuries and damages in their separate actions against A.P.S. and Bridgestone, the trial court concluded that the Naranjos had suffered an indivisible injury allegedly caused by those two, joint tortfeasors. The court then determined that, regardless of joint or several liability, once a judgment awarding total damages for an indivisible injury has been satisfied, a plaintiff's cause of action against all other tortfeasors is extinguished. Thus, the trial court ruled, the Naranjos had no cause of action against Bridgestone because they already had recovered their full damages from A.P.S. and had filed a satisfaction of judgment in that case.

¶10        The Naranjos contend, as they did below, that the doctrine of satisfaction of judgment only applied in a joint liability context and is now obsolete under Arizona's current

5

system. Therefore, they argue, the trial court erred in relying on that doctrine to bar their counterclaim against Bridgestone. Relying on *Sanchez v. City of Tucson*, 191 Ariz. 128, 953 P.2d 168 (1998), the Naranjos further argue that, in the absence of joint liability, their recovery from A.P.S. does not affect their claims against Bridgestone. That is so, they insist, because "recover[ing] 100% of a verdict and judgment against a tortfeasor whose liability is 'several only and is not joint' . . . does not make [a] plaintiff whole if there are other remaining tortfeasors." The Naranjos also contend Rule 20(a), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, Arizona's permissive joinder rule, "allows, but does not require, that all defendants be joined together in a single lawsuit."

¶11        In sum, the Naranjos essentially argue Arizona law permits them to sue multiple defendants in serial actions for their damages arising from the accident. Contending they "have not been made whole under Sanchez and A.R.S. § 12-2506," the Naranjos seek to "assert independent claims against Bridgestone Firestone for compensatory and punitive damages." They thus demand their "day in court" against Bridgestone.

¶12        We conclude that the Naranjos' position is unsound and reject it. In their action against A.P.S., the Naranjos presented evidence on all of their injuries and damages resulting from the accident. They sought special and general damages to compensate them for all claimed losses, including their past and future medical expenses, lost wages, and pain and suffering. The jury determined those damages and returned a verdict in their favor in excess of $9 million.

¶13        The Naranjos fail to establish or explain how their damages caused by Bridgestone's alleged fault differ from the damages resulting from A.P.S.'s fault. As the trial court noted, in both their complaint against A.P.S. and their counterclaim against Bridgestone, the Naranjos

6

alleged the same injuries and damages arising from a single accident. That the Naranjos collected "100% of [the] verdict and judgment" from A.P.S. alone does not negate the fact that they have recovered and received full payment on their total compensatory damages. Any further recovery from Bridgestone for the same injuries would result in an impermissible double recovery or unjust enrichment. *See Saichek v. Lupa*, 787 N.E.2d 827, 835 (Ill. 2003) ("[T]here may not be more than one recovery of damages for a single, indivisible injury."); Keeton, *supra*, § 48, at 330; *cf. Cimino v. Alway*, 18 Ariz. App. 271, 276, 501 P.2d 447, 452 (1972) (satisfaction of judgment in case against original tortfeasor does not necessarily bar subsequent action against attending physician for malpractice in treatment of initial injury, but if judgment in first action "is found to encompass an award for all the injuries sustained by [plaintiff], including those now alleged to be attributable to [physician's] malpractice, then the satisfaction of the judgment bars the instant suit to recover for a portion of the total injuries").

¶14 The Naranjos also fail to explain why the satisfaction of judgment doctrine should not continue to operate in these circumstances. In our view, both law and logic support the conclusion that the doctrine should and does apply here, despite Arizona's abolition of joint liability. *See* Keeton, *supra*, § 48, at 331 ("When payment of the judgment in full is made by the judgment debtor, there is no doubt that the plaintiff is barred from a further action against another who is liable for the same damages."). The Restatement (Third) of Torts § 25(a) (2000) supports that view:

> When a judgment includes a determination of the entirety of recoverable damages suffered by the plaintiff for an indivisible injury and provides for their recovery by the plaintiff against one or more of the defendants, payment of the full amount of recoverable damages constitutes a satisfaction of the plaintiff's rights against all tortfeasors legally responsible for the plaintiff's indivisible injury.

7

As comment c to that section points out: "When a plaintiff obtains a judgment for all recoverable damages, discharge of the judgment bars any further action against other potential tortfeasors . . . . By obtaining the full amount of recoverable damages, the plaintiff's legal rights are satisfied, and the plaintiff may not pursue any others for further recovery." This "merely reflects the well-established and commonsense rule that plaintiffs may only obtain one recovery of their damages." Restatement (Third) of Torts § 25, Reporter's Note, cmt. c; *see also* Restatement (Second) of Judgments § 50 cmt. d (1982) ("[W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforcible [sic] claim against any other obligor who is responsible for the same loss.").

¶15 We find these principles applicable and controlling here. Accordingly, we agree with the trial court that, even in the absence of joint liability, the Naranjos' recovery of their total compensatory damages from A.P.S., as evidenced by filing of the satisfaction of judgment in that case, eliminates any claim against Bridgestone for the same injuries. *See Saichek*, 787 N.E.2d at 835 ("Having once been awarded damages for the [indivisible] injuries . . . [, a plaintiff] cannot seek compensation for those injuries again."); *see also Pillo v. Reading Co.*, 232 F. Supp. 761, 762 (E.D. Pa. 1964) (satisfied judgment against individual tortfeasors barred plaintiff's subsequent action for same injuries under Federal Employers' Liability Act; second action would lead to double recovery since plaintiff "had his day in court and has presumably received full compensation"); *Fletcher v. Calif. Portland Cement Co.*, 159 Cal. Rptr. 915 (Ct. App. 1979) (full satisfaction of judgment in federal action by plaintiff against employer barred subsequent lawsuit in state court against concurrent tortfeasor for same injury).

¶16        Moreover, the Naranjos effectively have had their "day in court" against Bridgestone. In their action against A.P.S., both sides repeatedly referred to Bridgestone and blamed its defective tire as a cause of the accident. Although it is unclear from the record before us, the Naranjos state that A.P.S. did not formally designate Bridgestone as a nonparty at fault pursuant to § 12-2506(B) and Rule 26(b)(5), Ariz. R. Civ. P., 16 A.R.S., Pt. 1. But, in the settling of jury instructions in that case, the parties explicitly acknowledged that Bridgestone was to be treated as such.[2] The Naranjos and A.P.S. also agreed that the jury essentially would be allocating fault to the tire manufacturer, Bridgestone, in whatever percentage of the verdict the jury might assign to the Naranjos' "claims of product liability." Both sides made that same point in their closing arguments to the jury when they explained the meaning and effect of the special interrogatory on the verdict form. In short, Bridgestone was very much a part of the Naranjos' litigation against A.P.S.

¶17        The *Sanchez* case, on which the Naranjos rely, does not support their position. In that case, our supreme court concluded that a settlement with one defendant did not necessarily preclude the plaintiff from pursuing another defendant for its share of fault and proportionate damages. 191 Ariz. 128, ¶25, 953 P.2d 168, ¶25. The settling tortfeasor there had "only pa[id] for its share of fault." *Id.* Therefore, the court ruled, the plaintiff could proceed with a claim against the nonsettling tortfeasor for the remaining, uncompensated portion of damages. *See* Dobbs, *supra*, § 390, at 1088.

---

[2]Whether A.P.S. strictly complied with Rule 26(b)(5) is not relevant. "The purpose of [Rule 26(b)(5)] is to deal with situations where the plaintiff is unaware of a nonparty's fault." *LyphoMed, Inc. v. Superior Court*, 172 Ariz. 423, 427, 837 P.2d 1158, 1162 (App. 1992). Here, the Naranjos were fully aware of Bridgestone's identity, involvement, and potential liability, and they clearly agreed on the record that Bridgestone should be treated as a nonparty at fault.

¶18 Here, in contrast, the Naranjos have no uncompensated portion of damages to pursue. The jury in the case against A.P.S. awarded them their full damages. And, although the jury apparently intended to allocate thirty percent of the fault to Bridgestone by designating that percentage for the product liability claim, A.P.S. nonetheless was responsible for and, in fact, paid the entire amount of the judgment. The Naranjos have recovered all their compensatory damages resulting from the accident and, thus, have been made "whole." *See Piner v. Superior Court*, 192 Ariz. 182, ¶26, 962 P.2d 909, ¶26 (1998), *quoting* § 12-2506(A) ("When the tortious conduct of more than one defendant contributes to one indivisible injury, the entire amount of damage resulting from all contributing causes is the total amount 'of damages recoverable by the plaintiff.'"); Dobbs, *supra*, § 390, at 1091 ("Where joint and several liability is abolished, . . . the fact that the plaintiff suffered an indivisible injury remains significant, for the defendants' percentage of fault liability is measured by the total of the plaintiff's indivisible injury damages."). In sum, the trial court properly granted summary judgment in favor of Bridgestone based on the satisfaction of judgment in the Naranjos' case against A.P.S.

## II. Collateral estoppel

¶19 As Bridgestone points out, principles of collateral estoppel also prevent the Naranjos from relitigating their damages claim.

> "Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment."

*F.D.I.C. v. Adams*, 187 Ariz. 585, 593, 931 P.2d 1095, 1103 (App. 1996), *quoting Chaney Building Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986); *see also* Restatement

10

(Second) of Judgments § 27. When those elements are present, Arizona permits a new defendant in a subsequent case to use the doctrine defensively to preclude relitigation of an issue. *See Standage Ventures, Inc. v. State*, 114 Ariz. 480, 484, 562 P.2d 360, 364 (1977); *Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, ¶10, 62 P.3d 966, ¶10 (App. 2003).

¶20      In their case against A.P.S., the Naranjos had a full and fair opportunity to litigate, and in fact did litigate, the issue of their damages resulting from the accident. That issue was central to that litigation. Again, the Naranjos pursued and presented evidence on all their damages in that case. And the jury awarded them "full damages," as reflected on the form of verdict, of over $9 million.

¶21      The Naranjos counter that the jury "only assessed the damages caused by A.P.S." and argue they had no opportunity "to litigate the issue of their damages . . . caused by Bridgestone." We are unpersuaded. As discussed above, the damages "caused" by Bridgestone were the same damages "caused" by A.P.S. The Naranjos did not allege that Bridgestone's fault had caused any injuries other than those they sustained in the accident or that Bridgestone had somehow exacerbated those injuries. Again, the Naranjos have already claimed and recovered full compensatory damages for all such injuries. And, as also noted above, the jury was well aware throughout the litigation with A.P.S. of Bridgestone's potential fault and liability for the accident. Although the Naranjos actively opposed bringing Bridgestone into that action, Bridgestone was treated as a nonparty at fault, and the jury essentially allocated thirty percent of the fault to Bridgestone. Regardless of the allocation of fault, however, the Naranjos have litigated the issue of their total damages arising from the accident, and the jury assessed "full damages." The Naranjos cannot now relitigate that issue. *See* Restatement (Second) of Judgments § 29;

11

Restatement (Third) of Torts § 25, cmt. f; *cf. Selchert v. State*, 420 N.W.2d 816, 818 (Iowa 1988) (although plaintiff's unsatisfied judgment in first case did not bar subsequent, new action against different defendant, collateral estoppel barred relitigation of issue on "extent of [plaintiff's] injuries").

¶22     We find support for that conclusion in *Kathios v. General Motors Corp.*, 862 F.2d 944 (1st Cir. 1988). There, the plaintiff brought a dram shop action in state court. He obtained a jury verdict and resulting judgment, which was satisfied. The plaintiff then filed a separate action in federal court against General Motors, alleging negligence and product liability claims. General Motors moved for summary judgment, "contend[ing] that plaintiff's damages had been fully litigated in [the first case], and that satisfaction of the resulting judgment extinguished any further claim." *Id.* at 945. The federal district court granted the motion, ruling that "plaintiff was collaterally estopped from relitigating the amount of damages." *Id.*

¶23     The First Circuit affirmed that ruling on appeal. Finding it "obvious that the amount of damages was fully litigated in the state court," the court concluded that the jury verdict in the first case "caps any verdict which might be rendered in [the second case]." *Id.* at 946. The court noted that the plaintiff "had a full-sized bite of the apple" in the first case, in which the jury had "conclusively adjudicated" the extent of his damages. *Id.* at 951. By bringing the second action, the court further noted, "plaintiff bit off more than we can let him chew." *Id.* Accordingly, the court concluded that "resolution of the issue in [the first case] collaterally estops plaintiff from seeking redetermination of his damages in the instant action." *Id.* at 947. We reach that same conclusion here.

12

## III. Public policy considerations

¶24    Finally, we note that Arizona's public policy has long favored the joining of all known and available tortfeasors as defendants in one action. *See, e.g., United States Fid. & Guar. Co. v. Alfalfa Seed & Lumber Co.*, 38 Ariz. 48, 52-53, 297 P. 862, 864 (1931) ("Unquestionably the policy of our law is to determine the rights of all parties to a controversy in one suit, if possible."); *Ariz. Title Ins. & Trust Co. v. Kelly*, 11 Ariz. App. 254, 255, 463 P.2d 838, 839 (1970) ("The Rules of Civil Procedure, both before and after the extensive amendments [of] . . . 1966, encourage the joinder of all appropriate parties in a single suit to avoid multiplicity of litigation."); *see also Staffco, Inc. v. Maricopa Trading Co.*, 122 Ariz. 353, 357, 595 P.2d 31, 35 (1979) ("The thrust of . . . [joinder] rules is that, whenever possible, all claims should be disposed of in one action."); *Bill Alexander Ford, Lincoln, Mercury, Inc. v. Casa Ford, Inc.*, 187 Ariz. 616, 618, 931 P.2d 1126, 1128 (App. 1996) (under Restatement (Second) of Judgments § 29, plaintiff could not seek additional damages in subsequent action against defendant when plaintiff had "had the opportunity to litigate all such claims" in earlier action against other defendants).

¶25    As the court noted in *Kathios*, "[c]oncerns relating to judicial economy also militate against allowing plaintiffs to litigate their cases over and over, against one defendant at a time." 862 F.2d at 951; *cf. Behrens v. O'Melia*, ___ Ariz. ___, ¶7, 78 P.3d 278, ¶7 (App. 2003) (transferring action against certain defendants from one county to another and consolidating it there with separate, pending action against different defendant "will serve the interests of judicial economy" because both actions "arose out of the same injury" and "have common questions of law and fact").

13

¶26        Section 12-2506 also reflects this policy:

> B. In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit. Negligence or fault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was wholly or partially at fault. . . .
>
> C. The relative degree of fault of the claimant, and the relative degrees of fault of all defendants and nonparties, shall be determined and apportioned as a whole at one time by the trier of fact.

At a minimum, the legislature apparently intended, if not required, "*the* trier of fact" to determine and apportion "as a whole *at one time*" the fault of all possible tortfeasors, whether named or not named as parties. § 12-2506(C) (emphasis added). *See Behrens*, ___ Ariz. ___, ¶8, 78 P.3d 278, ¶8 (consolidating cases filed in different counties against separate defendants but arising from same injury "will ensure that one hundred percent of all damages are awarded and apportioned among all negligent defendants, as § 12-2506 requires"). That goal is not served when, as here, a plaintiff is well aware of multiple alleged tortfeasors but deliberately chooses to sue them separately in serial actions for the same injuries and damages. To permit such a practice would contravene Arizona's public policy as reflected in both our case law and § 12-2506.[3] *See id.* ("If

---

[3]Focusing on the second sentence of § 12-2506(B), the Naranjos contend subsections (B) and (C), when read together, only require a determination "in one proceeding" of "the fault of all parties and designated non-parties." According to them, the statute, in conjunction with Rule 20(a), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, implicitly permits a subsequent, separate action against any tortfeasors who are neither parties nor designated non-parties in the first case. But even if § 12-2506 does not always or necessarily "require that all of plaintiffs' claims against all defendants be included in one lawsuit," as the Naranjos argue, we do not agree that they may maintain their action against Bridgestone under the circumstances presented here.

Plaintiffs were allowed to proceed with separate suits against the [alleged tortfeasors], the damage awards could be inconsistent, and the resulting allocation of fault among the defendants could be other than one hundred percent.").

¶27 Having known of Bridgestone's potential liability and having apparently made a tactical decision not to name it as a defendant in their original action, the Naranjos may not maintain a new action against Bridgestone for damages they already have fully recovered. For all these reasons, we conclude the trial court properly entered summary judgment in favor of Bridgestone on the Naranjos' counterclaim.[4]

## IV. Punitive damage claim

¶28 The Naranjos alternatively contend their punitive damages claim against Bridgestone should stand even if their compensatory damage claim is precluded. In rejecting that claim, the trial court relied on *Edmond.* There, the Edmonds were injured when their car was struck by another vehicle driven by Carr. They sued Carr, recovered a judgment against her, and filed a satisfaction of judgment with the court. 132 Ariz. at 142, 644 P.2d at 296. The Edmonds then sued Fairfield, the owner of the vehicle Carr had been driving, seeking compensatory and punitive damages from the same accident. *Id.* at 143, 644 P.2d at 297. This court concluded that the Edmonds' claim for compensatory damages was precluded by the doctrine of satisfaction of

---

[4]The Naranjos also argue that, by attempting to sue A.P.S. and Bridgestone separately, they did not impermissibly split their cause of action. Because we have determined on other grounds that the Naranjos' recovery of their full damages from A.P.S. precludes them from maintaining a separate action against Bridgestone for those same damages, we do not address this argument.

15

judgment. *Id.* at 144, 644 P.2d at 298. And we ruled that the punitive damages claim likewise was barred.

> The [Edmonds] have satisfied the judgment, recovering their actual losses from Ms. Carr. They cannot now sue Fairfield for actual damages, because the satisfaction of judgment has extinguished the cause of action. A lawsuit for punitive damages only may not proceed once the cause of action for actual damages has been extinguished, actual damages being necessary to support punitive damages.

*Id.*

¶29        The Naranjos attempt to distinguish *Edmond*, arguing its outcome was controlled by the "principal/agent" relationship between Carr and Fairfield. The relationship between the alleged tortfeasors in *Edmond*, however, was not determinative and, in fact, this court did not even comment on the relationship. The Naranjos also point out that the case was decided before joint liability was abolished in Arizona, but they do not explain how that change would affect the court's analysis or conclusion. As in *Edmond*, the Naranjos' cause of action against Bridgestone for "actual damages has been extinguished." *Id.* Because they no longer can recover actual damages against Bridgestone, their claim for punitive damages cannot proceed.[5] *See LaFrentz v. Gallagher*, 105 Ariz. 255, 259, 462 P.2d 804, 808 (1969) (award of actual damages is prerequisite

_____

[5]When the trial court entered summary judgment in favor of Bridgestone on the Naranjos' counterclaim, there had been no adjudication of any obligation of contribution or indemnity between A.P.S. and Bridgestone. The trial court noted, however, that the ultimate outcome of A.P.S.'s indemnification claim against Bridgestone "does not change the analysis" of the Naranjos' punitive damage claim. Thereafter, the trial court ruled that Bridgestone is required to indemnify A.P.S. for that percentage of the total judgment the jury allocated to the product liability claim. Bridgestone has appealed from that ruling. In any event, as the trial court implicitly ruled, and as Bridgestone argues, its indemnity obligation to A.P.S. "cannot be recharacterized by the Naranjos as compensatory damages owed by [Bridgestone] to the Naranjos and, therefore, cannot provide the predicate for a punitive damages claim to them."

16

to recovery of exemplary damages); *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 131, 907 P.2d 506, 517 (App. 1995) ("A plaintiff must be entitled to compensatory damages before being entitled to punitive damages.").

¶30     Finally, we agree with Bridgestone that, "as a practical matter, to permit plaintiffs to pursue compensatory damages against one tortfeasor and then seek punitive damages in a separate lawsuit is a waste of judicial resources, requiring courts to try the same case multiple times, with the resulting multiplicity of suits, inconsistent verdicts, expense, delay, etc." To establish their claim for punitive damages, the Naranjos necessarily would need to prove Bridgestone's underlying liability for the accident and their resulting injuries, Bridgestone's proportionate fault, and the amount of compensatory damages before a fact-finder could even consider the various prerequisites for an award of punitive damages. *See Saucedo ex rel. Sinaloa v. Salvation Army*, 200 Ariz. 179, ¶21, 24 P.3d 1274, ¶21 (App. 2001) ("[O]ur common law mandates that a plaintiff suffer actual damages as a result of the underlying tort before a claim of punitive damages can be entertained."); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, ___ U.S. ___, 123 S. Ct. 1513, 1524, 155 L. Ed. 2d 585, ___ (2003) (declining "to impose a bright-line ratio which a punitive damages award cannot exceed" but noting that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). This would require proceedings largely duplicative of the Naranjos' action against A.P.S.

¶31     As noted earlier, public policy generally favors one action, when possible, to resolve all claims against all known, potential tortfeasors, and collateral estoppel bars the Naranjos from relitigating their actual damages. The Naranjos chose to exclude Bridgestone from the

original litigation and instead sought to recover their damages from A.P.S. alone. They have now recovered their full damages and have no further cause of action arising from the accident.

## DISPOSITION

¶32     The trial court's grant of summary judgment in favor of Bridgestone is affirmed.


_____
JOHN PELANDER, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Chief Judge


_____
PETER J. ECKERSTROM, Judge