Wilda J. TAYLOR, Plaintiff–Appellant,

v.

William R. COMPERE and Compere & Robinette, CPA's P.C., Defendants–Respondents.

No. 27705.

Missouri Court of Appeals,
Southern District,
Division Two.

July 16, 2007.

Motion for Rehearing or Transfer
Denied Aug. 8, 2007.

Application for Transfer Denied
Sept. 25, 2007.

Steven E. Marsh, Hulston, Jones & Marsh, Springfield, for appellant.

Gary E. Snodgrass, J. Todd Applegate, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, for respondent.

PHILLIP R. GARRISON, Judge.

Wilda J. Taylor ("Plaintiff") appeals from the trial court's grant of summary judgment in favor of William R. Compere ("Compere") and Compere & Robinette, a certified public accounting firm, (collectively referred to as "Defendants"). We reverse and remand.

On February 18, 2003, Plaintiff filed suit against Defendants alleging the following: Plaintiff had issued garnishments, executions and levies for all stock and stock certificates of Plaintiff's former husband, Robert Clark ("Clark"), in and for Clark Drilling, Inc. ("Clark Drilling"); Defendants had conspired with Clark and his current wife, Janette Clark ("Janette"), "to conceal, hide and secrete [Clark's] stock certificate in [Clark Drilling] from Plaintiff to defraud, hinder and delay Plaintiff's efforts to collect said judgment"; "[i]n and from January 1997 through February 1999, ... [Clark], Compere and Janette cooperated and acted in concert to transfer the stock certificate and/or shares represented thereby from [Clark] to Janette"; Compere was negligent in his involvement,

advice, guidance, and counsel in connection with the foregoing; and Plaintiff was entitled to punitive damages, in that "[t]he conduct of Defendants ... was committed willfully, intentionally and with the specific intent and purpose of harming, damaging and defrauding Plaintiff[.]"

On February 26, 2003, a judgment was entered in a separate case brought earlier by Plaintiff for fraudulent transfers of stock and salaries against Clark, Janette, and Clark Drilling, awarding Plaintiff damages in the amount of $23,773. That judgment was affirmed on appeal. *See Taylor v. Clark*, 140 S.W.3d 242 (Mo.App. S.D. 2004).

In this case, Defendants filed a motion for summary judgment, asserting that Plaintiff's fraudulent transfer claims against Defendants were barred by the outcome of the adjudication in *Taylor v. Clark*, and that Plaintiff was collaterally estopped from relitigating the issue of damages arising out of the stock transfers from Clark to Janette in 1997 through 1999. The motion further asserted that Plaintiff had "received full satisfaction of the judgment entered against [Clark], [Janette], and [Clark Drilling], arising out of the stock transfers." Defendants also claimed that, "[a]lthough [P]laintiff also claims punitive damages, Missouri follows the general rule that no punitive damages can be awarded absent an award of actual or nominal damages." Finally, Defendants' motion asserted that Plaintiff's current suit was an improper splitting of a cause of action not allowed under Missouri law.

Plaintiff filed a response to Defendants' motion for summary judgment with attachments which denied each of the twenty-three paragraphs of Defendants' statement of uncontroverted material facts, and which included a statement of additional material facts. Plaintiff also filed a "Motion for Leave to File First Amended Petition" along with a proposed amended petition.

After holding a hearing on the parties' motions, the trial court granted Defendants' motion for summary judgment, finding that additional discovery had not revealed any facts that were not already known to Plaintiff at the time of trial of *Taylor v. Clark*, and that "[s]uch claims were based on the same allegation of a fraudulent stock transfer that Plaintiff asserts in this case." It also found that Plaintiff's current claim also alleged professional negligence by Defendants, but does not claim privity or otherwise explain how Defendants owe her a duty of care. In so holding, it found that the amount of damages suffered by Plaintiff as a result of the fraudulent transfer of stock had previously been judicially determined and that Plaintiff was barred from relitigating that issue. The trial court also said, "[t]o allow Plaintiff to bring a claim against these Defendants for the same transaction at issue in the previous suit would be to allow an improper splitting of her cause of action and allow a potential double recovery or inconsistent judgment." Finally, the trial court denied Plaintiff's request to file an amended petition finding that it was moot based on the trial court's granting of summary judgment.

Plaintiff filed a motion to amend, vacate and set aside the judgment or for new trial, which was overruled. This appeal followed.

In her first point on appeal, Plaintiff argues that the trial court erred in granting Defendants' motion for summary judgment on the grounds of res judicata and collateral estoppel, because Defendants "did not establish any affirmative defense negating [Plaintiff's] claims[.]" [1] The dis-

---

1. In arguing the propriety of the trial court's judgment, the parties do not distinguish between any of the theories pled by Plaintiff.

positive portion of Plaintiff's argument centers around whether Plaintiff may maintain a suit against Defendants for punitive damages, where any actual damages that Plaintiff may have suffered have already been judicially determined in a separate suit and satisfied. Defendants argue that Plaintiff's claims are "barred by res judicata, collateral estoppel and/or the rule against splitting a cause of action." Because we find that Plaintiff's suit is not barred by those theories, we reverse and remand.

We give no deference to the trial court's grant of summary judgment, as the propriety of summary judgment is strictly an issue of law. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We use the same principles employed by the trial court in determining whether to grant summary judgment. *Id.* Furthermore, we view the record in the light most favorable to the non-movant. *Id.* All facts set forth by affidavit or otherwise in support of a motion for summary judgment are taken as true unless contradicted by the non-movant's response. *Id.*

A defending party is entitled to summary judgment if he can show:

(1) facts that negate *any one* of the claimant's elements ..., (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the "defending party," each establishes a right to judgment as a matter of law.

Specifically, there is no briefing by the parties as to whether Defendants are entitled to judg-

Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.

*Id.* at 381 (emphasis in original).

Once movant has met this burden, the non-moving party may only avoid summary judgment being entered against him/her if that party can "show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Id.* Here, the facts underlying the trial court's judgment are not in dispute, but these facts do not entitle Defendants to judgment as a matter of law for the reasons specified in the discussion below.

In granting summary judgment for Defendants, the trial court concluded that, "[t]o allow Plaintiff to bring a claim against these Defendants for the same transactions at issue in the previous suit would be to allow an improper splitting of her cause of action and allow a potential double recovery or inconsistent judgment."

 The doctrine of res judicata, also referred to as claim preclusion, is "a judicially created doctrine designed to inhibit a multiplicity of lawsuits." *Hollida v. Hollida*, 190 S.W.3d 550, 554 (Mo.App. S.D. 2006). Res judicata precludes not only the issues decided in the former suit, but "all points properly belonging to the subject matter of the litigation and which the parties, exercising reasonable diligence, might have brought into the case at the time." *Id.* at 555.

 For res judicata to apply, there must be: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the

ment as a matter of law on Plaintiff's negligence action.

action; and (4) identity of the quality or status of the person for or against whom the claim is made. *Id.*

▉ "[T]he rule against splitting a cause of action is a form of claim preclusion or res judicata." *Shores v. Express Lending Serv., Inc.,* 998 S.W.2d 122, 127 (Mo.App. E.D.1999). "The test to figure out if a cause of action is single and cannot be split is: (1) whether the separate actions brought arise out of the same act or transaction and (2) whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions." *Hollida,* 190 S.W.3d at 556.

▉▉ We find that the doctrine of res judicata and the rule against splitting a cause of action do not bar Plaintiff's suit against Defendants. "When two defendants are potentially liable for the same loss, the claims are considered separate and two suits can be maintained against the differing parties." *Id.* (citing the Restatement (Second) of Judgments § 49). Comment (a) to the Restatement (Second) of Judgments § 49, cited approvingly by this Court in *Hollida,* reads as follows:

> When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. If he brings an action against one of them, he is required to present all the evidence and theories of recovery that might be advanced in support of the claim *against that obligor.* ... If he recovers judgment, his claim is "merged" in the judgment so that he may not bring another action on the claim against the obligor whom he has sued.... Correlatively, if judgment is rendered against him, he is barred from bringing a subsequent action against the obligor.... But the claim against others who are liable for the same harm is regarded as separate. Accordingly, *a judgment for or against one obligor does not result in merger or*

> *bar of the claim that the injured party may have against another obligor.*

(emphasis supplied). Applying the foregoing principles to the facts before us in *Hollida,* we explained, "[h]ere the harm may be the same, namely, the general idea that some damage occurred because certain individuals allegedly misrepresented facts to Wife. But, that harm was allegedly caused by two different defendants.... The claims are separate. Wife's current suit is not precluded by the defense of res judicata." 190 S.W.3d at 556.

Similarly, in the present case, while the harm suffered as a result of the transfer of Clark's stock may be the same, it was allegedly caused by separate parties, and therefore, the claims are separate. Accordingly, Plaintiff's current suit is not precluded by the defense of res judicata or the rule against splitting a cause of action.

Regarding the application of collateral estoppel to the issue of damages, the trial court found that: (1) Plaintiff's claim in *Taylor v. Clark* "[was] based on the same allegation of a fraudulent stock transfer that Plaintiff asserts in this case"; and (2) "Plaintiff received a judgment in her favor on her previous claim for the fraudulent transfer of the stock [which] ... has, in fact, been satisfied." The trial court concluded that "[t]he damages suffered by Plaintiff as a result of the fraudulent transfer of stock have previously been judicially determined, and Plaintiff is barred from relitigating that issue." Plaintiff does not challenge these findings on appeal, but argues that "even if the issue of the amount of *actual* damages for the February 1997 and 1999 fraudulent transfers has already been decided [and paid], the issue of potential *punitive* damages against [Defendants] for *their* participation in the fraudulent transfer scheme has simply never been decided or adjudicated[.]" (emphasis in original).

The doctrine of collateral estoppel, or issue preclusion, "precludes a party or those in privity with that party from relitigating issues that were necessarily and unambiguously decided in a previous case[.]" *Hollida,* 190 S.W.3d at 554. The elements of collateral estoppel are as follows: (1) the issue decided in the prior case mirrors that in the present action; (2) the prior suit resulted in a final judgment on the merits; (3) the party against whom the doctrine is asserted participated as a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. *Id.*

The Missouri Supreme Court has stated that "Section 51 of the Restatement [ (Second) of Judgments] reports well-developed rules of collateral estoppel recognized in this state." *Helm v. Wismar,* 820 S.W.2d 495, 498 (Mo. banc 1991). Comment d to Section 51 provides that:

A judgment for the injured person, even though favorable to him on the question of liability, is adverse to him insofar as it determines that his damages did not exceed those awarded. It is therefore ordinarily conclusive as a ceiling on the damages that may be recovered in the second action.

Similarly, comment d to Section 50 provides that:

[t]he adjudication of the amount of the loss also has the effect of establishing the limit of the injured party's entitlement to redress, whoever the obligor may be. This is because the determination of the amount of the loss resulting from actual litigation of the issue of damages results in the injured person's being precluded from relitigating the damages question.

We agree with the trial court, that the doctrine of collateral estoppel precludes Plaintiff from relitigating the issue of actual damages arising from the February 1997 and 1999 stock transfers. However, as we discuss below, even if those damages have been satisfied, Defendants are not entitled to judgment as a matter of law in this case, because Plaintiff also seeks to recover punitive damages from Defendants.

"Establishing a conspiracy will make all defendants jointly and severally liable for actual damages, but it does not change the rule that punitive damages are to be assessed against each tort-feasor depending, among other factors, upon his degree of culpability." *Moore v. Shelton,* 694 S.W.2d 500, 501 (Mo.App. S.D.1985). "[W]hile the principles of joint and several liability and imputation of conduct may apply to an actual damages claim, such principles are not to be applied to a punitive damages claim when the evidence shows differing degrees of culpability and/or ability to pay." *Brown v. New Plaza Pontiac Co.,* 719 S.W.2d 468, 473 (Mo.App. W.D.1986).

In arguing that Plaintiff cannot maintain the present suit, Defendants cite the general rule that "[t]here can be no award of punitive damages absent an award of actual damages." *Environmental Energy Partners, Inc. v. Siemens Bldg. Technologies, Inc.,* 178 S.W.3d 691, 713 (Mo.App. S.D.2005). However, this rule does not bar Plaintiff from bringing the present suit. While she has already proven that she has suffered actual damages arising out of the fraudulent transfer of Clark's stock certificates, there has been no determination of any liability Defendants may have for those damages. If, in the present suit, Plaintiff can establish Defendants' *liability* for the harm suffered, such a result could provide the necessary predicate to pursue punitive damages.

Our conclusion here is consistent with the results reached in *Reis v. Pea-*

*body Coal Co.*, 997 S.W.2d 49 (Mo.App. E.D.1999), and *Freeman v. Myers*, 774 S.W.2d 892 (Mo.App. W.D.1989). In *Reis*, the plaintiffs invoked the arbitration clause of a mineral lease agreement, claiming that the defendant breached the lease and committed fraud. 997 S.W.2d at 54–55. The arbitration panel awarded the plaintiffs actual damages, but determined that it did not have authority to award punitive damages. *Id.* at 55. The plaintiffs brought a subsequent suit for fraud based upon the same injuries seeking only punitive damages. *Id.* The case proceeded to trial and the plaintiffs received an award of only punitive damages. *Id.* at 58. On appeal, the eastern district of this Court upheld the award,[2] agreeing with the trial court's reasoning in its denial of the defendant's post-trial motion:

> In the present case plaintiffs showed, and the jury found, that they suffered actual damage. The reason for the lack of an award of actual damages in the present proceeding is not because of a lack of evidence but rather because of the unusual procedural posture of the case in which the fraud and contract claims were severed upon [defendant's] motion, and an award of actual damages was made on the contract claim in the arbitration proceeding.

*Id.* at 68. The court further explained that, "[h]ere, the reason for the lack of an actual damages award at trial was that the award of actual damages was made by the arbitrators." *Id.* at 68–69.

In *Freeman*, the plaintiff brought suit against two defendants for fraudulent misrepresentation relating to the purchase of a used automobile with a fraudulent odometer reading. 774 S.W.2d at 893–94. Before trial, the plaintiff received a settlement of $32,500 from one of the defendants in exchange for her release. *Id.* at 894. The plaintiff proceeded to trial against the remaining defendant, and was awarded a judgment for $7,559.27 in actual damages and $100,000 in punitive damages. *Id.* at 893. On appeal, the defendant argued that the plaintiff's receipt of the $32,500 settlement, well in excess of the actual damages determined at trial, "extinguished her claim both for actual damages and punitive damages." *Id.* at 894. In rejecting the defendant's contention, the western district of this Court relied on the Maryland case of *Exxon Corp. v. Yarema*, 69 Md.App. 124, 516 A.2d 990 (1986), which held that "the jury's award of compensatory damages to plaintiff, even though it was canceled by the trial court's application of the settlement amount, satisfied the requirement of proof of compensatory damages before one could be entitled to punitive damages." *Freeman*, 774 S.W.2d at 894 (citing *Exxon Corp.*).

We also note that several other jurisdictions have allowed a plaintiff to bring a suit seeking punitive damages, where the actual damages alleged had already been satisfied by a separate defendant. *See Turner v. Firstar Bank, N.A.*, 363 Ill. App.3d 1150, 300 Ill.Dec. 927, 845 N.E.2d 816, 824 (2006); *McGee v. Bruce Hospital System*, 344 S.C. 466, 545 S.E.2d 286 (2001); *Sanchez v. Clayton*, 117 N.M. 761, 877 P.2d 567, 573 (1994); and *Beerman v. Toro Mfg. Corp.*, 1 Haw.App. 111, 615 P.2d 749, 755 (1980).[3]

---

**2.** It should be noted, however, that *Reis* involved an application of Kentucky law to the plaintiffs' claim for punitive damages. 997 S.W.2d at 58.

**3.** For jurisdictions holding otherwise, *see Bridgestone/Firestone North America Tire,*

*L.L.C. v. Naranjo*, 206 Ariz. 447, 79 P.3d 1206, 1213 (2003); *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 220 F.Supp.2d 1249, 1253–57 (N.D.Ala.2002); *Mike Loehr & Co., Inc. v. Wal–Mart Stores, Inc.*, 919 F.Supp. 244, 248 (E.D.Tex.1996); and *Sprague, Levin-*

In sum, Plaintiff is collaterally estopped from relitigating the issue of the *amount* of actual damages relating to the 1997 and 1999 stock transfers. That being so, Plaintiff is still entitled to maintain the present suit against Defendants, because the issues of Defendants' *liability* for Plaintiff's actual damages, and any corresponding punitive damages have yet to be adjudicated. We still recognize that there can be no punitive damages awarded absent an award of actual damages, and our holding in this case should not be construed as an abrogation of that rule in any way. There must still be a determination of Defendants' liability for actual damages before any punitive damages may be awarded. However, to the extent that the actual damages have been judicially determined and satisfied, Plaintiff is entitled to no further actual damages relating to the same wrong. *Beare v. Yarbrough*, 941 S.W.2d 552, 555 (Mo.App.E.D.1997).

Plaintiff's first point is well-founded. We remand this case to the trial court with instructions that Plaintiff be allowed to proceed with her action against Defendants. At the conclusion of the trial, if the jury has found Defendants liable for actual damages (whether or not there is also a finding of liability for punitive damages), then the trial court will strike the award of actual damages given the fact that Plaintiff's actual damages have already been satisfied by Clark and Janette. Our treatment of Plaintiff's first point renders her second point moot.

The judgment of the trial court is reversed and remanded for further proceedings not inconsistent with this opinion.

BATES, C.J., and LYNCH, J., concur.