THERESE PICARD[1] *vs.* TIMOTHY THOMAS & others[2]
(and two companion cases[3]).

No. 01-P-1716.

Middlesex. September 15, 2003. - January 28, 2004.

Present: ARMSTRONG, C.J., KAPLAN, & PORADA, JJ.

*Negligence,* Motor vehicle, Causing death, Gross negligence, Wrongful death. *Wrongful Death. Motor Vehicle,* Entrustment. *Insurance,* Motor vehicle insurance, Disclaimer of liability.

In a civil action for negligence and wrongful death arising out of a motor vehicle accident, the judge erred in granting summary judgment in favor of the driver of a vehicle that was traveling with the vehicle involved in the accident, where there was slim but sufficient evidence to establish that the two vehicles were engaged in racing or a "challenge and response" competition, thereby creating a controverted question regarding the negligence of the driver. [364-367]

In a civil action for negligence and negligent entrustment arising out of a motor vehicle accident, the judge erred in granting summary judgment on the negligence claim in favor of the defendant, who was a passenger in a vehicle traveling with the vehicle involved in the accident and who had allowed the driver (who had only a learner's permit) to drive her car, where there was thin but sufficient evidence to raise factual issues as to whether the defendant knowingly permitted the driver to operate her vehicle in violation of a provision of G. L. c. 90 and whether that violation was causally related to the accident [367-369]; however, the judge correctly granted summary judgment in favor of the defendant on the claim of negligent entrustment where, although the evidence showed that the driver was inexperienced, it did not show that he was incompetent or unfit to drive a car at the time of the accident or that the defendant knew him to be incompetent or unfit at the time she gave him permission to drive [369-370].

This court declined to address negligence claims brought against a particular

[1] Individually and as next friend of Danielle Dowling.

[2] Samantha Pearlman and David Pearlman.

[3] The two companion cases are (1) Joanne Cone, administratrix of the estate of Jordan Cone, *vs.* Timothy Thomas, Samantha Pearlman, and David Pearlman; and (2) Commerce Insurance Company *vs.* David Pearlman; Timothy Thomas; Therese Picard, individually and as next friend of Danielle Dowling; and Joanne Cone, administratrix of the estate of Jordan Cone.

defendant in a civil action, where the plaintiffs did not present any argument in their briefs on the issue of that defendant's liability. [370]

The judge in an action for declaratory judgment involving litigation arising from a motor vehicle accident properly granted summary judgment in favor of the plaintiff insurance company on the ground that the insurer had no duty to defend or indemnify in the underlying actions the driver of a vehicle that was traveling with the vehicle involved in the accident, where there was no evidence that the driver operated the vehicle with the express or implied consent of the insured named in the vehicle's insurance policy. [370-372]

CIVIL ACTIONS commenced in the Superior Court Department on October 23, 1997; October 15, 1998; and April 27, 1999, respectively.

The cases were heard by *S. Jane Haggerty*, J., on motions for summary judgment.

*Michael E. Mone, Jr.*, for Therese Picard & another.

*Michael J. Traft* for Timothy Thomas.

*Kenneth H. Anderson* for Samantha Pearlman & another.

*Peter J. McCue* for Commerce Insurance Company.

PORADA, J. These actions arise out an automobile accident that occurred on March 23, 1997, when two cars full of teenage friends were traveling together on Route 2A in Acton to a common destination. The defendant Timothy Thomas drove the lead automobile with Samantha Pearlman (Samantha) as his passenger. This car, a Toyota Avalon, was leased by David Pearlman, Samantha's father, for Samantha's use and was insured by Commerce Insurance Company (Commerce). Jeffrey Smith drove the second car, a Toyota Corolla, and carried Danielle Dowling, Jordan Cone, and Craig Hinckley as his passengers. After attempting to pass the Avalon, Smith lost control of the Corolla, which traveled off the road and came into contact with two trees before coming to rest. Cone and Hinckley were killed, and Dowling was severely injured in the accident.

Following the accident, Therese Picard brought an action for negligence and loss of consortium against Thomas and both Samantha and David Pearlman. She also sought relief against Samantha for negligent entrustment. Joanne Cone brought an action against Thomas and the Pearlmans for negligence, wrongful

death, and gross negligence. Commerce filed a declaratory judgment action seeking a ruling that it had no duty to defend or indemnify Thomas in the litigation based on this accident. The cases were consolidated in the Superior Court. On motions for summary judgment filed by the Pearlmans and Commerce, the motion judge allowed summary judgment for the defendants in the Picard and Cone actions and for Commerce in its declaratory judgment action. From these judgments, Picard and Cone appeal.

1. *Claims for negligence and wrongful death against Thomas.* We first address the claims of Cone and Picard against Thomas based on negligence and wrongful death. As the motion judge recognized, summary judgment is not usually appropriate in a negligence action, *Foley* v. *Matulewicz*, 17 Mass. App. Ct. 1004, 1005 (1984), but there are instances when "no rational view of the evidence" would warrant a finding of negligence. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 56 (1983). Here, the motion judge rejected the plaintiffs' claims that Thomas's driving was negligent and that a proximate cause of the accident was Thomas's racing or his involvement in a "challenge and response" with Smith at the time of the accident that exposed him to liability for the tortious conduct of Smith. *Nelson* v. *Nason*, 343 Mass. 220, 221-222 (1961). The judge found that the evidence submitted, when viewed in the light most favorable to the plaintiffs, was insufficient as matter of law to establish Thomas's liability.

We summarize that evidence in the light most favorable to the plaintiffs. *Conley* v. *Massachusetts Bay Transp. Authy.*, 405 Mass. 168, 173 (1989). All the teenagers in the two cars had spent the afternoon together, first at Dowling's house and then at the home of another friend, Melanie Benton, who was not involved in this accident. They traveled to Benton's home in two cars: the Avalon, driven by Samantha, and the Corolla, driven by Smith. Although Smith's car left Dowling's home first, Samantha took a short cut to arrive at Benton's home before Smith. The group then left Benton's home to go to Bergson's Restaurant. After meeting at Bergson's Restaurant, they decided to go to the home of Thomas's father in Concord. When they left the restaurant, Samantha gave Thomas permis-

sion to drive her car. Although she knew that Thomas only had a learner's permit, had not taken a driver's education course, and had previously driven her car only two or three times, she let him drive because it was a clear day, there was not much traffic, and the distance was not great. Thomas drove out of the restaurant parking lot first, but then pulled over to wait for Smith so they could drive together. Thomas took this action even though he was aware that Smith knew the way to their destination and had been there many times. As Smith approached, he slowed so Thomas could pull out in front of him. Both vehicles then proceeded on Route 2A with Thomas's car as the lead vehicle and the Corolla, according to Thomas, about one-half or one car length behind the Avalon. When the Avalon was about two miles from the restaurant, Smith pulled the Corolla aside the Avalon for a few seconds in order to pass it and then pulled back in behind the Avalon. Thomas and Samantha estimated their speed at that time to be between forty-five to fifty miles per hour. The posted speed limit was forty-five miles per hour. When Thomas then looked back in his rearview mirror, he saw the Corolla spinning out of control. Thomas then accelerated the speed of his car out of fear that the Corolla would hit the Avalon. The Corolla then spun off the highway, striking two trees before coming to rest.

A witness, Kimberly Jean Rowe, testified that she was traveling in the opposite lane of travel from the Avalon and the Corolla just prior to the accident when she saw the two cars coming toward her, one in her lane of travel and the other in the opposite lane. She noticed that the two cars were very close together and that it appeared that one car was attempting to pass the other car when it pulled back behind the other vehicle. She stated that the two cars "zoomed by her" and were traveling more quickly than the other traffic (about sixty miles per hour). She also stated that the two cars were very close together and looked almost like one car.

Another witness, George Ranney, was sitting at his desk at his work place when he looked out the window and observed the Avalon. He estimated that its speed was at least eighty miles per hour, that it made a big "whooshing" sound when it passed by him, and that it shook the windows in his office and brought

him to his feet because of its speed. Seconds later, Ranney observed the Corolla coming sideways across the road and saw it hitting a tree.

The accident was investigated by Trooper Stephen Walsh, who filed an accident reconstruction report. In Walsh's opinion, Smith was solely responsible for the accident based on his speed, his oversteering the Corolla, and his inexperience. Walsh noted that, after the accident, both Thomas and Samantha made certain inconsistent statements, but that no evidence indicated that the operation of the Avalon precipitated Smith's loss of control. Immediately after the accident Thomas and Samantha told the police that Samantha had been the operator of the car. They subsequently admitted that Thomas was the operator. Their estimate of the speed of their vehicle was also inconsistent with the statements made by Rowe and Ranney. Walsh estimated the speed of the Corolla at the time of the accident to be seventy-six miles per hour. There was also evidence that Thomas had obtained his learner's permit in December, 1996, and had been given driving lessons by his mother, but that he had only been behind the wheel of a car four or five times.

In arguing that the motion judge erred in allowing summary judgment, the plaintiffs rely upon the case of *Nelson* v. *Nason*, 343 Mass. at 221-222, in which the Supreme Judicial Court acknowledged that persons who race automobiles on highways or are engaged in a challenge and response in the operation of their automobiles on highways are jointly liable in negligence for the injuries their actions cause to others. In that case, the two operators of the vehicles, Nason and Perham, knew one another and were proceeding together to a common destination. There was evidence that both vehicles were speeding and were traveling in close proximity to one another, about a foot apart. There was evidence that the Nason vehicle passed a vehicle driven by an individual named Scott, traveling in the opposite direction, at a high rate of speed. Scott then saw the Perham vehicle approaching him. The driver of the Perham vehicle lost control and collided with the Scott vehicle. The court held that it was not error to deny Nason's motion for a directed verdict in an action brought by the administrator of the injured passenger in Perham's car because there was evidence of a challenge and

response in the speed and relative positions of the two vehicles. *Id.* at 220, 222. Here, the motion judge rejected this case as controlling because there was no evidence that Thomas had passed Smith's vehicle or had accelerated when Smith attempted to pass him and thus there was no "response" by Thomas to Smith's alleged challenge.

We agree that speed and a common destination are not enough to establish that the drivers of two vehicles were engaged in racing or a challenge and response. See *O'Brien* v. *Mansfield,* 941 S.W.2d 582, 586 (Mo. Ct. App. 1997). However, the following evidence of (1) Thomas's waiting for Smith to follow him despite Thomas's awareness that Smith knew the way to their destination; (2) both vehicles' excessive speed and the vehicles' close proximity as testified to by Rowe and Ranney; (3) Thomas's failure to slow down when Smith attempted to pass; and (4) Thomas's postaccident attempt to cover up the true identity of the Avalon's operator and its preaccident speed, see *Parsons* v. *Ryan,* 340 Mass. 245, 248 (1960), establish a toehold that creates a controverted question regarding Thomas's negligence. Based on this evidence, a reasonable inference could be drawn that Thomas was racing with the Smith car or that Smith was responding to a challenge posed by Thomas. Cf. *Finn* v. *Morgan,* 46 A.D.2d 229, 232 (N.Y. 1974); *Ogle* v. *Avina,* 33 Wis. 2d 125, 134 (1966). See cases collected in Annot., Liability of Participant in Unauthorized Highway Race for Injury to Third Person Directly Caused by Other Racer, 13 A.L.R.3d 431 (1967). Summary judgment in favor of Thomas was inappropriate. But see *Walker* v. *Hall,* 34 Md. App. 571, 581-583 (1976) (judge did not err in directing a verdict for the defendant where the evidence disclosed only two cars of teenage friends traveling together at excessive speeds and there was evidence that one of the cars passed a slower moving vehicle).

2. *Claims for negligence and negligent entrustment against Samantha Pearlman.* We turn to the negligence and negligent entrustment claims against Samantha. We first address the plaintiffs' claim that liability will lie against Samantha based on G. L. c. 90, § 8B, as appearing in St. 1983, c. 448, which provides, in pertinent part, that the "licensed operator shall be liable for the violation of any provision of this chapter [G. L.

c. 90], or of any regulation made in accordance herewith, committed by such person with a learner's permit. . . ."[4] The motion judge ruled that no liability can be imposed against Samantha based on § 8B because no citation for a violation of G. L. c. 90 issued against Thomas. While we reject this rationale, see *Montone* v. *James,* 4 Mass. App. Ct. 857 (1976); *Petras* v. *Storm,* 18 Mass. App. Ct. 330, 332-333 (1984) (judge suitably instructed that the jury could consider any violations of c. 90 that they found as evidence of negligence), we agree that, even if Thomas had been cited for a violation of G. L. c. 90, that citation, standing alone, would not create a civil cause of action against Samantha. *Leone* v. *Doran,* 363 Mass. 1, 8, *S.C.,* 363 Mass. 886 (1973).

Nonetheless, "[a] violation of a criminal statute is some evidence of the defendant's negligence as to all consequences the statute was intended to prevent." *Adamian* v. *Three Sons, Inc.,* 353 Mass. 498, 499 (1968). Here, one can infer that this provision was inserted in G. L. c. 90, § 8B, to insure that the licensed operator would provide proper supervision of the unlicensed driver for the protection of the public. As such, the statute comes into play as evidence of negligence if Samantha knowingly permitted Thomas to operate the Avalon in violation of any provisions of G. L. c. 90 or any regulations promulgated thereunder and if his violation was causally related to the accident on which the plaintiffs' claim is based. Cf. *Leone* v. *Doran,* 363 Mass. at 8-9 (owner or person in control of a car who knowingly allows an unlicensed person to operate his vehicle may be in violation of G. L. c. 90, § 12, but the statutory violation is not evidence of negligence unless a causal relationship between the unlawful conduct and the accident is established).

Here, there is evidence that at the time Samantha gave permission to Thomas to drive the Avalon, Thomas waited for Smith to pull out before Thomas proceeded as the lead car and that Smith slowed his vehicle to allow Thomas to proceed first. There is also evidence as noted, *supra,* that Thomas and Smith

---

[4]At the time of the accident, the statute required the licensed operator to be eighteen years of age or over, which age Samantha had attained. (The statute was subsequently amended to require the licensed operator to be twenty-one years old. St. 1998, c. 220, § 4.)

were both speeding at the time of the accident and that Smith was racing with Thomas or responding to a challenge posed by Thomas at that time. Yet Samantha testified that during Thomas's operation of the car, she was paying attention to his driving and that "things were fine." She also attempted, immediately after the accident, to cover up that Thomas had been driving and allegedly gave a false statement about the Avalon's preaccident speed. See *McNamara* v. *Honeyman*, 406 Mass. 43, 54 n.10 (1989) (fact that a physician inserted a back-dated note indicating a patient was doing well after she committed suicide could be considered as "consciousness of liability"). Cf. *Salamone* v. *Riczker*, 32 Mass. App. Ct. 429, 433 (1992) (discussion among teenagers about the assignment of blame in the event of an automobile accident admissible on the issue of the standard of care). Thomas also testified that at the time Smith attempted to pass, Samantha did not say anything to him or do anything and that there was only small talk between the two of them during the drive. Although the evidence is thin, it is sufficient to raise factual issues as to whether Samantha knowingly permitted Thomas to operate her vehicle in violation of a provision of G. L. c. 90 and whether that violation was causally related to the accident. Because of the existence of those material issues of fact, summary judgment in favor of Samantha based on her negligence was inappropriate.

The Picard complaint also alleges a claim against Samantha based on negligent entrustment. This claim is independent from the claim predicated on a violation of G. L. c. 90, § 8B. See *Leone* v. *Doran*, 363 Mass. at 11. In order to establish a claim for negligent entrustment, the plaintiff must establish that (1) the defendant entrusted a vehicle to an incompetent or unfit person whose incompetence or unfitness was the cause of the plaintiff's injuries; (2) the persons who owned and controlled the vehicle gave specific or general permission to the operator to drive the automobile; and (3) the defendant had actual knowledge of the incompetence or unfitness of the operator to drive the vehicle. *Ibid. Mitchell* v. *Hastings & Koch Enterprises, Inc.*, 38 Mass. App. Ct. 271, 276-277 (1995). Although there was evidence that Thomas was sixteen years of age at the time of the accident and had not taken a driver's education course,

he did have a learner's permit which he had obtained approximately three months before the accident. There was evidence that Thomas had driven the Avalon two or three times before the accident without incident. There was also evidence that Samantha gave Thomas permission to drive her car only during daylight hours when the weather was clear and the distance not far, which was the case here. Samantha also knew that Thomas's family was teaching him to drive. Thomas had been behind the wheel of a car only four or five times before this accident, but he had not received any citations or tickets for motor vehicle violations. The claim for negligent entrustment must be predicated on Samantha's knowledge of Thomas's driving habits at the time that she gave him permission to drive the car. We agree with the motion judge that, although this evidence was sufficient to show that Thomas was inexperienced, it does not show that he was incompetent or unfit to drive a car at the time of the accident or that Samantha knew him to be incompetent or unfit at the time she gave him permission to drive. Summary judgment was thus appropriate on the count alleging negligent entrustment against Samantha because the plaintiffs have failed by countervailing evidence to demonstrate that they can establish a necessary element of their claim. *Kouravacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

3. *Claims for negligence against David Pearlman.* We turn now to the claims for negligence against David Pearlman. The plaintiffs have not presented any argument in their brief on the issue of David Pearlman's liability in negligence for the injuries on which the plaintiffs' claims are based. Consequently, we need not address this issue. *King* v. *Driscoll*, 418 Mass. 576, 585 n.8 (1994), *S.C.*, 424 Mass. 1 (1996). *Missett* v. *Cardinal Cushing High School*, 43 Mass. App. Ct. 5, 6 n.3 (1997). Parenthetically, we note that the plaintiffs did not present any evidence that David Pearlman was in control of the vehicle at the time of the accident or gave his consent, express or implied, to Thomas's operation of the vehicle. Without this evidence, no liability would attach to David Pearlman arising out of Thomas's operation of the vehicle.

4. *Declaratory judgment action.* Finally, we consider the ac-

tion for declaratory relief filed by Commerce. The judge was correct in declaring that Commerce had no duty to defend or indemnify Thomas for any damages recovered against him in these actions because there was no evidence that Thomas operated the vehicle with the express or implied consent of David Pearlman.

The policy in question, a sixth edition standard Massachusetts automobile insurance policy, contains the following pertinent provisions:

"General Provisions and Exclusions

" . . .

"2. Our Duty to Defend You and Our Right to Settle

"We have the right to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy."

"Compulsory Insurance

" . . .

"Part 1. Bodily Injury to Others

"Under this Part, we will pay damages to people injured or killed by your auto in Massachusetts accidents. . . . We will pay only if you or someone else using your auto with your consent is legally responsible for the accident. . . ."

"Optional Insurance

" . . .

"Part 5. Optional Bodily Injury to Others

"Under this Part, we will pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident. We will also pay damages if someone else using your auto with your consent is legally responsible for the accident. . . . Also like the

Compulsory Part, this Part does not pay for the benefit of anyone using an auto without the consent of the owner."

We have construed almost identical language to mean that the insurer's obligation under the policy extends only to persons who are driving the vehicle with the consent of the policyholder under both the compulsory and optional coverages of the policy. *Hanover Ins. Co.* v. *Locke*, 35 Mass. App. Ct. 679, 680-682 (1993). Here, the evidence is uncontroverted that the person named as the policyholder in item one of the coverage selection page was David Pearlman and that, while Samantha Pearlman was listed as an operator of the vehicle, she did not have David Pearlman's permission to allow Thomas to operate this vehicle or permission to allow anyone else to operate the vehicle except in an emergency. This case is distinguishable from those cases in which the insurer has been held liable to defend and indemnify a third party because the child who gave permission to the third party had unfettered permission to operate the car. See *Drescher* v. *Travelers Ins. Co.*, 359 Mass. 458, 461 (1971) (father gave his son general dominion over a car with no restrictions on its use). Absent David Pearlman's express or implied consent to Thomas's operation of the car, the motion judge properly declared that Commerce was under no obligation to defend or indemnify Thomas for any damages recovered against him in these actions.[5]

5. *Conclusion.*

In the action brought by Therese Picard, individually and as next friend of Danielle Dowling, insofar as the judgment dismisses the counts for negligence and loss of consortium against Timothy Thomas and Samantha Pearlman, the judgment is reversed. In all remaining respects the judgment is affirmed.

In the action brought by Joanne Cone, administratrix of the estate of Jordan Cone, insofar as the judgment dismisses the complaint against Timothy Thomas and Samantha Pearlman, it is reversed. The portion of the judgment dismissing the claims against David Pearlman is affirmed.

---

[5]Commerce does not deny that it is obligated to defend Samantha in this action.

In the action brought by Commerce for declaratory judgment, the judgment is affirmed.

*So ordered.*