IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| MARC ANTHONY ACUNA, in his own right, | ) ) ) | 2 CA-CV 2005-0049 DEPARTMENT B |
| Plaintiff/Appellee, | ) ) | O P I N I O N |
| v. | ) ) | |
| MICHAEL KROACK and SANDRA L. HAMPTON, husband and wife, | ) ) ) | |
| Defendants/Appellants. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20034274

Honorable Charles S. Sabalos, Judge

AFFIRMED IN PART;
MODIFIED IN PART AND REMANDED WITH DIRECTIONS

Law Office of Michael E. Larkin
  By Michael E. Larkin                                           Tucson
                                          Attorney for Plaintiff/Appellee

Chandler & Udall, LLP
  By Lori A. Petersen and Charles A. Davis                      Tucson
                            Attorneys for Defendants/Appellants

P E L A N D E R, Chief Judge.

¶1 In this personal injury action arising from a motor vehicle accident, defendants/appellants Michael Kroack and his wife, Sandra Hampton,[1] appeal from the judgment entered on a jury verdict in favor of plaintiff/appellee Marc Acuna. Appellants argue that there was insufficient evidence to support Acuna's claim of negligent entrustment against Hampton, that the trial court erred in admitting evidence of appellants' post-accident conduct, and that the jury's damage award is excessive and not supported by the evidence.

¶2 We previously issued an opinion in this case. *Acuna v. Kroack*, 462 Ariz. Adv. Rep. 11 (Ct. App. Oct. 6, 2005). Acuna then moved for reconsideration of only the disposition section of the opinion. Having considered the parties' briefs and oral argument on that motion and finding it well-taken, we vacate our original opinion and issue this one in its place.[2] For the reasons stated below, we vacate that portion of the trial court's judgment apportioning liability against Hampton on the negligent entrustment claim, modify the judgment to apportion one hundred percent of the fault against Kroack, and remand the case to the trial court with directions to enter judgment in favor of Acuna and against Kroack in the amount of $200,000.

---

[1]Hampton and Kroack were married in August 2002, approximately two months before the accident. In her deposition, the videotape of which was admitted at trial, Hampton identified herself as Sandra Hampton Kroack. Nonetheless, in order to avoid confusion, and because the caption of the action was never formally changed and the judgment refers to Sandra Hampton, we refer to her by that name.

[2]In a separate, unpublished memorandum decision filed this date, we fully address, analyze, and dispose of the parties' arguments on Acuna's motion for reconsideration. *See* Ariz. R. Civ. App. P. 28(g), 17B A.R.S.; *Fenn v. Fenn*, 174 Ariz. 84, 85, 847 P.2d 129, 130 (App. 1993).

## BACKGROUND

¶3        We view the evidence and reasonable inferences therefrom in the light most favorable to upholding the jury's verdict. *See Hutcherson v. City of Phoenix*, 192 Ariz. 51, ¶ 13, 961 P.2d 449, 451 (1998); *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, ¶ 3, 92 P.3d 882, 885 (App. 2004). In October 2002, appellants, Illinois residents, were visiting Tucson and staying at the home of Kroack's mother, who lived in the vicinity of Oracle and Rudasill Roads.[3] Shortly before the accident, in the afternoon of October 2, appellants left that residence in a Saab automobile to go shopping. With Hampton driving, they went north on Oracle to a plant nursery located just south of Rudasill. As they left the nursery a short time later, appellants "changed" drivers after arguing about who should drive the car, which Hampton described as a "little Saab [that] was really [her] little baby." According to Hampton, Kroack had wanted to drive because he had thought Hampton was "going the wrong way" in the nursery parking lot, and she had wanted to drive "because it was [her] car." Kroack apparently prevailed in the argument because, although Hampton later maintained that she had been the driver, he admittedly was driving at the time of the accident.

¶4        The accident occurred at the intersection of Oracle and Rudasill when Kroack, with Hampton as his passenger, was making a U-turn from driving northbound on Oracle to head southbound. He drove directly in front of Acuna's oncoming vehicle, which

---

[3]Although Kroack and Hampton did not appear in person at trial, the jury viewed their videotaped depositions.

was traveling approximately forty-five miles per hour in the inside, southbound lane. Kroack ultimately admitted that he had been negligent and that his negligence had caused the collision.

¶5        Immediately after the collision, Kroack got out of the car and spoke with Acuna, initially accusing him of having changed lanes. Acuna testified that Kroack's "words were slurring" at that time, but that he had not smelled any odor of alcohol on Kroack's breath or seen bloodshot or watery eyes or a flushed face. According to an eyewitness, however, Kroack's face had appeared to be flushed when he got out of the car after the collision.

¶6        As he made sure southbound vehicles were stopped, Kroack directed Hampton to drive the car off Oracle Road into a nearby parking area on the west side of the street, and she did so. Kroack then left the scene on foot before police officers arrived. He headed south on Oracle and, according to Acuna and the other eyewitness, had appeared to be swaying and unsteady on his feet as he walked. Kroack was not seen at the accident site again, even though Acuna remained there for a couple of hours.

¶7        Kroack testified that he had left the scene shortly after the accident to get help and had chosen to walk to a Circle K store some distance south of the intersection to use the telephone, even though a number of other nearby businesses were closer to the intersection. Kroack further testified that, after he had telephoned for help at the Circle K, he eventually had lost consciousness and later had "woke[n] up" in a church parking lot. He returned to

4

the accident scene later that day, but by that time, everything and everybody were "gone," including his wife, the car, and the police.

¶8 When questioned by an investigating police officer at the scene, Hampton identified herself as the owner of the car but did not "give [him] any information when [he] asked her about who the driver was or where he had gone." The officer testified that Hampton had then "claimed she was the driver." She was taken by ambulance to a hospital, where the officer spoke with her again. Hampton responded to the officer's questioning until he asked her who had been driving the car at the time of the accident. Hampton then told the officer about a man named Alejandro who had been doing some work on the patio at her mother-in-law's house, where she and her husband had been staying. According to the officer, Hampton "was indicating or trying to say that Alejandro [had been] in the vehicle with her," but she did not know his last name or how to contact him.

¶9 During his investigation at the accident scene, the officer found two beer cans in the back seat of appellants' vehicle, one open and empty and the other unopened and full. When questioned at his deposition about the beer cans, Kroack testified that he previously had given Alejandro two cans of beer as he worked at the home of Kroack's mother. Kroack testified that he had picked up the cans and, "because [he] didn't want to go around to the trash can," had put them in the back seat just before he and Hampton had left to drive to the plant nursery.

5

¶10    When Kroack and Hampton returned by train to Illinois several weeks after the accident, Kroack discussed the collision with Hampton and told her he had been driving. Several days later, Hampton gave a recorded statement in which she said she had been driving at the time of the accident. And, at her deposition in August 2004, Hampton continued to maintain that she had been driving at the time of the accident.

¶11    Acuna brought this action against Kroack and Hampton, alleging a negligence claim against both for the collision itself and a separate claim against Hampton for negligently entrusting the vehicle to Kroack. Acuna sought both compensatory and punitive damages. Before trial, appellants moved for partial summary judgment on the punitive damage and negligent entrustment claims. The trial court granted the motion on Acuna's claim for punitive damages. Finding genuine issues of material fact existed on his negligent entrustment claim, however, the court denied appellants' motion on that claim.

¶12    Before trial, both sides filed motions in limine on the admissibility of evidence of appellants' post-collision conduct. Appellants asked the trial court to preclude any evidence on the status of Kroack's driver's license, a prior driving under the influence of an intoxicant (DUI) arrest warrant, and the presence of the two beer cans in appellants' vehicle. The court ruled that evidence of their post-collision conduct and of the two beer cans would be admitted. But the court precluded any evidence relating to Kroack's driver's license or his prior DUI arrest.

**¶13** Before and during trial, defendant Kroack admitted fault for having caused the collision and Acuna's injuries. At the close of evidence during trial, the trial court denied defendant Hampton's motion for judgment as a matter of law (JMOL), made pursuant to Rule 50, Ariz. R. Civ. P., 16 A.R.S., Pt. 1, on the negligent entrustment claim. The jury returned a verdict in favor of Acuna in the amount of $200,000. The jury apportioned seventy percent of the fault to Kroack and thirty percent to Hampton. This appeal followed the trial court's entry of judgment on the verdict and its denial of appellants' motion for a new trial.[4]

## DISCUSSION

### I. Evidence of post-accident conduct

**¶14** Appellants argue the trial court erred in admitting evidence of their post-accident conduct.[5] Specifically, they contend the court should have precluded any evidence of Kroack's having "left the scene of the accident" and of Hampton's having "initially

---

[4]Appellants did not appeal from the trial court's order denying their motion for a new trial but, rather, only from the judgment itself. *See* A.R.S. § 12-2101(F)(1) (order denying new trial is appealable); *Wendling v. Sw. Sav. & Loan Ass'n*, 143 Ariz. 599, 601, 694 P.2d 1213, 1215 (App. 1984) ("This court lacks jurisdiction to review matters not contained in the Notice of Appeal.").

[5]We address this evidentiary issue first because it has a direct bearing on our analysis and disposition of appellants' principal argument—that the evidence was insufficient to support the jury's finding of fault against Hampton on Acuna's negligent entrustment claim. That claim clearly would not stand if the evidence to which appellants objected should have been excluded. In addition, appellants' challenge to the damage award is also based, in part, on the trial court's admission of that evidence.

claimed that she was driving the vehicle involved in the subject accident."[6]  According to appellants, that evidence "was not instructive as to how the accident occurred" and, "at trial, there was no issue whatsoever" on that topic.  Because Kroack admitted having negligently driven the vehicle and having caused the accident, appellants argue, "evidence of [their] post-accident conduct should have been excluded" as "irrelevant and unduly prejudicial."

¶15        "A trial court has broad discretion in the admission of evidence, and we will not disturb its decision absent an abuse of that discretion and resulting prejudice." *Crackel*, 208 Ariz. 252, ¶ 59, 92 P.3d at 898.  In support of their argument, appellants rely on *Forquer v. Pinal County*, 22 Ariz. App. 266, 526 P.2d 1064 (1974), and *Saucedo v. Salvation Army*, 200 Ariz. 179, 24 P.3d 1274 (App. 2001).  We find neither case controlling or particularly helpful on the evidentiary issue posed here.

¶16        In *Forquer*, a wrongful death action that involved a punitive damage issue, the court concluded that "acts of the wrongdoer occurring after the liability creating event are normally not material on the issue of punitive damages unless such acts constitute evidence as to either the manner in which the liability-creating event occurred or to the aggravation of the victim's injuries." 22 Ariz. App. at 269, 526 P.2d at 1067.  Unless the post-accident conduct "has a reasonable relationship either to the state of mind of the tortfeasor at the time of the event itself or to the injured parties' actual damages," the court stated, evidence of

_____

[6]We note in passing that, contrary to the suggestion in appellants' opening brief, Hampton did not merely claim "initially" that she had been driving their car.  Rather, she continually expressed that belief not only at the accident scene but also in her recorded statement several weeks after the accident and in her deposition taken almost two years later.

such conduct generally "is inadmissible on the issue of punitive damages." *Id*. at 270, 526 P.2d at 1068. *Saucedo*, like *Forquer*, also was a wrongful death case involving a punitive damages issue. In rejecting the plaintiffs' demand for punitive damages, the court concluded that the driver's "failure to remain at the scene of the accident was not, as a matter of law, a proximate cause of [the decedent's] death, nor did this failure contribute in any degree to his injury." *Saucedo*, 200 Ariz. 179, ¶ 16, 24 P.3d at 1278.

**¶17** We first note that, unlike *Forquer* and *Saucedo*, the evidentiary issue here does not involve a punitive damage claim, appellants having obtained partial summary judgment on that issue before trial. The question, instead, is whether the evidence was relevant to Acuna's negligent entrustment claim. To establish that claim, Acuna had to show, inter alia, that the defendant driver had been incompetent to drive safely because of a physical or mental condition and that the defendant-entrustor had known or should have known that fact. *See Powell v. Langford*, 58 Ariz. 281, 285, 119 P.2d 230, 232 (1941) ("[W]here one who owns a dangerous instrumentality, such as an automobile, and loans it to another who, to the knowledge of the owner, is incompetent to drive such a vehicle, the owner is guilty of negligence if the driver negligently injures another."); *see also* Restatement (Second) of Torts §§ 307, 308, 390 (1965).

**¶18** Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401, 17A A.R.S.; *see Hawkins v.*

9

*Allstate Ins. Co.*, 152 Ariz. 490, 496, 733 P.2d 1073, 1079 (1987); *Reader v. Gen. Motors Corp.*, 107 Ariz. 149, 155, 483 P.2d 1388, 1394 (1971). We agree with Acuna that the evidence of Kroack's "flight from the scene [was] germane to the negligent entrustment claim" in that it arguably had a bearing on the issue of whether he had been competent to drive at the time of the accident. His balance, gait, and speech were indicia of his coordination and possible impairment. *Cf. State v. Rosengren*, 199 Ariz. 112, ¶ 3, 14 P.3d 303, 306 (App. 2000) ("possible signs of alcohol impairment" included "slurred speech, a noticeable stagger while walking, and a sideways body sway").

¶19       Though far from conclusive, the evidence of Kroack's post-accident conduct was material and probative on the factual issue of his competence to safely drive. *See Rossell v. Volkswagen of America*, 147 Ariz. 160, 171, 709 P.2d 517, 528 (1985) ("Evidence which fails to establish the theory at which it was aimed may, nevertheless, be considered on any other issue to which it is relevant."). Therefore, the trial court did not abuse its discretion in admitting that evidence. *See Wilson v. City of Tucson*, 8 Ariz. App. 398, 403, 446 P.2d 504, 509 (1968) (after driver's "sudden departure" from accident scene, investigating "officers could consider his flight as an additional factor tending to indicate guilt"); *cf. State v. Speers*, 209 Ariz. 125, ¶ 30, 98 P.3d 560, 568 (App. 2004) (trial court did not abuse its discretion in admitting "'flight' evidence at trial," "given the very minimal standard that evidence must satisfy in order to be 'relevant' and therefore admissible"); *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, ¶ 26, 10 P.3d 1181, 1190 (App. 2000) ("[T]he

10

balancing of factors under Rule 403[, Ariz. R. Evid., 17A A.R.S.,] is peculiarly a function of trial courts, not appellate courts.").

¶20        We reach the same conclusion on the evidence of Hampton's various post-accident statements that she had been driving when the collision occurred. That evidence obviously did not relate to post-accident "conduct" at all. And appellants cite no authority, nor are we aware of any, that would preclude evidence in a motor vehicle accident case of a party's statements about who had been driving at the time of the accident. That the defense acknowledged at trial that Kroack had been driving neither divested Hampton's testimony of any impeachment value nor rendered it irrelevant or otherwise inadmissible. In sum, we find no reversible error in the trial court's evidentiary rulings.

## SUFFICIENCY OF THE EVIDENCE

¶21        Appellants argue the evidence was insufficient to support the jury's verdict against Hampton on Acuna's claim of negligent entrustment. That evidence of appellants' post-accident conduct and statements was relevant and admissible on that claim does not necessarily mean the evidence was sufficient to support a finding of liability on it. *See* Joseph M. Livermore et al., *Law of Evidence* § 401, at 63 (4th ed. 2000) ("In considering relevancy, it is important to distinguish what is necessary to admit a particular piece of evidence from what evidence is sufficient to sustain a finding.").

¶22        During trial, as noted earlier, the trial court denied appellants' motion for JMOL on the negligent entrustment claim. The court then instructed the jury that, to

11

establish his negligent entrustment claim, Acuna had to prove: (1) "that Defendant owned or controlled a vehicle"; (2) "Defendant gave the driver permission to operate a vehicle"; (3) "the driver, by virtue of his physical or mental condition, was incompetent to drive safely"; (4) "the Defendant knew or should have known that the driver, by virtue of his physical or mental condition, was incompetent to drive safely"; (5) "causation"; and (6) "damages." That instruction, which appellants do not challenge on appeal, properly stated the requisite elements of a negligent entrustment claim in Arizona. *See Powell*, 58 Ariz. at 285, 119 P.2d at 232.[7] As noted earlier, the jury's verdict included a finding that allocated thirty percent of the fault to Hampton, presumably based solely on Acuna's negligent entrustment claim against her.

¶23 On multiple grounds, appellants challenge the sufficiency of the evidence to support that verdict. Specifically, they contend the evidence was insufficient to establish elements (1) through (4) in the jury instruction. In essence, therefore, appellants assert the trial court erred in denying their motion for JMOL on the negligent entrustment claim. We

---

[7]*See also Tellez v. Saban*, 188 Ariz. 165, 171, 933 P.2d 1233, 1239 (App. 1996) (tort of negligent entrustment not restricted "to cases in which the owner entrusts a vehicle to one known to be incompetent or inexperienced," but also applies when "'the peculiar circumstances of the case are such as to give the actor good reason to believe that the third person may misuse [the instrumentality]'"), *quoting* Restatement (Second) of Torts § 308, cmt. b (1965); *cf. Martin v. Schroeder*, 209 Ariz. 531, n.1, 105 P.3d 577, 579 n.1 (App. 2005) (recognizing that Restatement (Second) of Torts § 390 (1965) "sets forth a 'negligent entrustment' claim"); *Quinonez v. Andersen*, 144 Ariz. 193, 197, 696 P.2d 1342, 1346 (App. 1984) (recognizing Restatement (Second) of Torts § 307 (1965) as basis for negligent entrustment claim).

review that ruling de novo.[8] *See Crackel*, 208 Ariz. 252, ¶ 20, 92 P.3d at 890; *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, ¶ 6, 995 P.2d 735, 738 (App. 1999).

**¶24**     A trial court should grant a motion for JMOL "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).   In analyzing this issue, we "review the evidence in a light most favorable to upholding the jury verdict" and will affirm "if any substantial evidence exists permitting reasonable persons to reach such a result." *Hutcherson*, 192 Ariz. 51, ¶ 13, 961 P.2d at 451.

---

[8]Both divisions of this court have applied a de novo standard of review in this context. *See, e.g., Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, ¶ 34, 81 P.3d 1016, 1025 (App. 2003); *Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, ¶ 9, 65 P.3d 956, 961 (App. 2003); *State ex rel. Miller v. Wells Fargo Bank of Ariz., N.A.*, 194 Ariz. 126, ¶ 12, 978 P.2d 103, 106 (App. 1998); *Shoen v. Shoen*, 191 Ariz. 64, 65, 952 P.2d 302, 303 (App. 1997).   Similarly, our supreme court has "review[ed] the trial court's grant of a directed verdict *de novo.*" *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 505, 917 P.2d 222, 234 (1996).   In more recent decisions, however, the court has reviewed a trial court's "decision to deny post-trial motions [for judgment notwithstanding the verdict (JNOV), now called JMOL] for an abuse of discretion." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, ¶ 12, 961 P.2d 449, 451 (1998); *see Gonzales v. City of Phoenix*, 203 Ariz. 152, ¶ 2, 52 P.3d 184, 185 (2002) ("A trial court's denial of a motion for JNOV will be reversed only if it reflects a manifest abuse of discretion.").   Nonetheless, because the JMOL ruling at issue here (unlike in *Hutcherson* and *Gonzales*) occurred during trial and before verdict, we review that ruling de novo.  And we agree with Division One's observation that, "[b]ecause the test for granting or denying a motion for JNOV and a directed verdict is the same, the standard for review ought also to be the same." *Shoen*, 191 Ariz. at 65, 952 P.2d at 303.

¶25 With respect to the first element—ownership or control of the vehicle—appellants contend "[t]here was no substantial evidence, or even argument, that the vehicle was [Hampton's] sole and separate property under either Arizona or Illinios law." *See Snodgrass v. Baumgart*, 974 P.2d 604, 607-08 (Kan. Ct. App. 1999) (when spouses share equal right to use and possess vehicle and neither spouse has superior or exclusive right of control over it, no action for negligent entrustment lies against one spouse for the other's negligence); *cf. Powell*, 58 Ariz. at 285, 119 P.2d at 231 (noting that "the evidence is such that the jury could well have believed that defendant was the legal owner of the car in her own right, and the only interest which her husband had therein was that it was intended it should be used for his benefit as much as for hers"). With respect to the second element of the tort, appellants argue the evidence was "totally insufficient to support a conclusion that [Hampton] gave her husband permission to drive the car" or that she "had reason to believe that she could have prevented [him] from driving."

¶26 We do not address these arguments, however, because appellants failed to raise them below. At no time before, during, or after trial did appellants challenge the first two elements—ownership and permission—of the negligent entrustment claim. Indeed, in moving for JMOL on the negligent entrustment claim during trial, appellants' counsel stated she did not "have a problem with—that [Hampton] owned [the car or] that she gave Mr. Kroack permission to drive it." Rather, appellants only challenged the sufficiency of the

14

evidence to support any finding that Kroack "was inexperienced or incompetent" to drive or that Hampton had known about that.

¶27 Under these circumstances, appellants waived their argument on appeal relating to the ownership and permission elements of the negligent entrustment claim. *See Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004) (party generally may not raise new issues or theories on appeal in attempt to secure reversal); *Webber v. Grindle Audio Prods., Inc.*, 204 Ariz. 84, ¶ 26, 60 P.3d 224, 230 (App. 2002) ("an appeal is not the appropriate place to consider issues or theories not presented below" in summary judgment proceedings); *cf. Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 27-28, 945 P.2d 317, 338-39 (App. 1996) (although party neglected to include issue in motion for directed verdict, issue was not waived because it did not relate to sufficiency of evidence, involved pure question of law, and other party previously was aware of movant's position on that issue before motion was made). Although appellants acknowledge "[t]his long-standing rule" of waiver of issues not raised below, they assert that rule neither "relieve[s] a party from its burden of presenting evidence in support of its case in chief" nor precludes them from challenging the sufficiency of the evidence on appeal. But appellants cite no authority in support of that proposition, and we are not aware of any in this context.[9]

---

[9]We also note that, in their post-trial motion for new trial or, alternatively, JMOL, appellants did not specifically challenge the sufficiency of the evidence to support the ownership or permission elements of Acuna's negligent entrustment claim. Rather, they only challenged the sufficiency of the evidence on Kroack's alleged incompetence to drive and on Hampton's actual or constructive knowledge of that. On appeal from a final judgment, an appellate court "shall not consider the sufficiency of the evidence to sustain

15

¶28 Appellants further argue the evidence does not support the jury's implicit conclusion that "Kroack was by virtue of his physical or mental condition incompetent to drive safely at the time of the accident." We find this to be a difficult and close question. According to Acuna, the evidence was sufficient to support a finding that Kroack "was not fit to drive at the time he was given permission." Acuna points to the following facts or inferences from the evidence to support his contention: two beer cans were found in the back seat of appellants' car, one empty and the other unopened; Kroack saw Acuna's vehicle "and pulled right in front of it in the course of making a U-turn"; "Kroack was slurring his words immediately after the collision" and "appeared to have a flushed, red-faced appearance"; Kroack "fled the scene before the police arrived"; he "was swaying and unsteady on his feet as he fled the scene"; and Hampton gave inaccurate or misleading information to the investigating officer about the identity and whereabouts of the driver and claimed she had been driving at the time of the collision.

¶29 Viewed in the light most favorable to upholding the jury's verdict, the foregoing evidence arguably supported an inference that Kroack, in the words of the trial court's instruction to the jury, "by virtue of his physical or mental condition, was incompetent to drive safely." Although Kroack had an explanation for the beer cans in the

the verdict or judgment in an action tried before a jury unless a motion for a new trial was made." A.R.S. § 12-2102(C). "In other words, a motion for new trial must be made before the scope of the appeal may be enlarged to include the sufficiency of the evidence to sustain the verdict or judgment," and "[t]hat scope may not be enlarged . . . beyond the matters assigned as error in the motion for new trial." *Gabriel v. Murphy*, 4 Ariz. App. 440, 442, 421 P.2d 336, 338 (1966).

car and testified that he had hit his head on the windshield during the collision and ultimately had lost consciousness, the jury obviously was entitled to disbelieve his testimony. *See Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, ¶ 12, 9 P.3d 314, 318 (2000) ("The court or jury is not compelled to believe the uncontradicted evidence of an interested party."). Based on the facts summarized above, we cannot say the record lacks any substantial, albeit circumstantial, evidence to support a finding that Kroack had been incompetent to drive safely.

¶30 We reach a different conclusion, however, on the issue of whether Hampton was aware of her husband's alleged incompetence. As the trial court instructed the jury, Acuna had the burden of proving that Hampton "knew or should have known that the driver, by virtue of his physical or mental condition, was incompetent to drive safely."[10] The record contains no substantial evidence to support such a finding. As appellants correctly point out:

> There was no testimony with respect to [Hampton's] knowledge or understanding of her husband's driving abilities, nor was [she] asked about her knowledge of [his] driving record or her understanding of the status of his driver's licen[s]e. [Hampton] was never questioned whether she had seen her husband

---

[10]Restatement (Second) of Torts § 390 (1965) imposes liability for negligent entrustment when, inter alia, "the supplier knows or has reason to know" of the other's incompetence to safely use a chattel. For purposes of the Restatement, "'[t]he words "reason to know" are used . . . to denote the fact that the actor has information from which a person of reasonable intelligence or [o]f the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.'" *Webster v. Culbertson*, 158 Ariz. 159, 163, 761 P.2d 1063, 1067 (1988), *quoting* Restatement of Torts § 12(1) (1934).

consume any alcohol prior to the accident. In short, there was absolutely no evidence that [Hampton] knew or should have known that her husband was incompetent or impaired at the time of the accident.[11]

¶31     As noted above, no direct evidence established that Kroack had been unfit or incompetent to drive at the time of the accident. Circumstantial evidence, however, arguably supported an inference to that effect. *See Lohse v. Faultner*, 176 Ariz. 253, 259, 860 P.2d 1306, 1312 (App. 1992) ("It is now well-settled . . . in Arizona and elsewhere, in civil and criminal cases, that direct and circumstantial evidence have equal probative worth."); *see also Andrews v. Fry's Food Stores*, 160 Ariz. 93, 96, 770 P.2d 397, 400 (App. 1989). At best, the jury's implicit finding that Hampton had either actual or constructive knowledge of her husband's alleged incompetence at the time she permitted him to drive is also based on no more than an inference. But "[t]here must be some probative evidence to support such an inference," and we find such evidence lacking here. *Randall v. Alvarado-Wells*, 187 Ariz. 308, 310, 928 P.2d 732, 734 (App. 1996).

¶32     The evidence of Kroack's post-accident speech, appearance, and actions does not prove, even circumstantially, that Hampton knew or should have known of his alleged incompetence to drive when she permitted him to do so. And any inference to that effect

---

[11]We also note that Hampton was not asked any questions in her deposition about the beer cans found in the back seat of appellants' car, nor did the investigating officer ask her about that. *See Campbell v. VanRoekel*, 347 N.W.2d 406, 412 (Iowa 1984) (evidence on car owner's "personal knowledge of [driver's] prior driving record and drinking habits was proper . . . because such information is the gravamen of a negligent entrustment cause of action").

18

based on Hampton's own post-accident statements or her continuous, albeit incorrect, assertions that she had been driving is overly speculative and not reasonably supported by the evidence.[12] *See Picard v. Thomas*, 802 N.E.2d 581, 587 (Mass. App. Ct. 2003) (summary judgment properly entered in favor of defendant owner on plaintiff's negligent entrustment claim, although owner had permitted Thomas to drive, had "attempted, immediately after the accident, to cover up that [he] had been driving" and allegedly had given false statement about car's pre-accident speed); *Laughlin v. Rose*, 104 S.E.2d 782, 787 (Va. 1958) (setting aside jury verdict in favor of plaintiff on negligent entrustment claim because evidence was insufficient to show that defendant-owner of vehicle, "at the time he entrusted the car to [the driver]," "or at any time prior thereto," knew or should have known that driver "showed any signs of intoxication, or that [owner] even knew that she had had anything to drink during the day").

¶33        As the court in *Picard* stated, "The claim for negligent entrustment must be predicated on [the owner's] knowledge of [the driver's] driving habits at the time that she gave him permission to drive the car." 802 N.E.2d at 587; *see also Laughlin*, 104 S.E.2d

---

[12]Acuna emphasizes the investigating officer's testimony about Hampton's selective memory, evasive answers, refusal to disclose any information about Kroack's actions or whereabouts, and sudden mention of an unidentifiable person named Alejandro as possibly having been in the vehicle with her. Although that evidence might arouse suspicion, in our view, it supports neither a reasonable, nonspeculative inference nor a finding by a preponderance of the evidence that Hampton knew or should have known of Kroack's unfitness to drive at the time she permitted him to do so. *Cf. In re United States Currency of $315,900.00*, 183 Ariz. 208, 214, 902 P.2d 351, 357 (App. 1995) (even when facts "are highly suspicious," "[s]urmise and supposition . . . are not enough" to support ultimate finding).

at 787 (owner's "negligence, if any, in entrusting the car to [the driver] must be determined by what he knew or should have known at the time he entrusted the car to her"). No such evidence was presented in this case.

¶34    "It is not sufficient that the facts are such that negligence might have existed; it must affirmatively appear that it did." *Payne v. M. Greenberg Constr.*, 130 Ariz. 338, 347, 636 P.2d 116, 125 (App. 1981). A finding on a party's actual or constructive knowledge cannot be based on "sheer speculation," nor is it proper "to permit the jury to draw speculative inferences which [are] not based on probative facts." *Matts v. City of Phoenix*, 137 Ariz. 116, 119, 669 P.2d 94, 97 (App. 1983); *see also Preuss v. Sambo's of Ariz., Inc.*, 130 Ariz. 288, 290, 635 P.2d 1210, 1212 (1981) (trial court erred in denying motion for directed verdict when evidence did not support jury's speculative finding that defendant had known or should have known of alleged defect). Reversal is required when a jury's verdict "is supported by nothing beyond speculation, suspicion and bottomless inference." *In re Pitt's Estate*, 88 Ariz. 312, 318, 356 P.2d 408, 412 (1960); *see also Preuss*, 130 Ariz. at 290, 635 P.2d at 1212. In our view, that is the situation here.

¶35    We are mindful of our limitations as an appellate court and of a trial court's superior position and unique perspective in evaluating the sufficiency of evidence. *See Hutcherson*, 192 Ariz. 51, ¶ 12, 961 P.2d at 451; *see also Orme Sch.*, 166 Ariz. at 310-11, 802 P.2d at 1009-10; *Reeves v. Markle*, 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978). Nonetheless, "'it is not only our right, but our duty, to set aside a verdict' if there is no

20

evidence in the record to justify it." *Styles v. Ceranski*, 185 Ariz. 448, 450, 916 P.2d 1164, 1166 (App. 1996), *quoting Spain v. Griffith*, 42 Ariz. 304, 305, 25 P.2d 551, 551 (1933); *see also Min-A-Con Equip. Co. v. T.M.K. Constr. Co.*, 102 Ariz. 24, 25, 424 P.2d 152, 153 (1967); *Pierce v. Lopez*, 16 Ariz. App. 54, 59, 490 P.2d 1182, 1187 (1971). Absent any substantial evidence that Hampton either knew or should have known of Kroack's alleged incompetence to drive when she permitted him to do so just before the accident, the jury's finding that she was at fault on Acuna's negligent entrustment claim "is much too tenuous." *Pierce*, 16 Ariz. App. at 59, 490 P.2d at 1187; *see also Lutfy v. Lockhart*, 37 Ariz. 488, 492, 295 P. 975, 977 (1931) (reversing jury verdict on plaintiff's negligent entrustment claim and stating trial court should have granted directed verdict on it because "no evidence" established that vehicle's owner had known of driver's alleged incompetence). Accordingly, we vacate that portion of the judgment that imposes liability against Hampton.

## DAMAGE AWARD

¶36 Appellants also argue the jury's damage award is excessive, not supported by the evidence, and based on passion and prejudice arising from the trial court's admission of evidence of appellants' post-accident conduct. We will not disturb a jury's damage award unless it is "'so unreasonable and outrageous as to shock the conscience of this court.'" *Hutcherson*, 192 Ariz. 51, ¶ 36, 961 P.2d at 455, *quoting Stallcup v. Rathbun*, 76 Ariz. 63, 66, 258 P.2d 821, 824 (1953). We have no basis for reaching that conclusion here.

21

¶37 Having determined that the trial court did not abuse its discretion in admitting evidence of the challenged "post-accident conduct," we reject appellants' challenge to the verdict on that basis. Although Acuna's counsel improperly encouraged the jury in closing argument to "send [appellants] a message that they will hear . . . [by] giv[ing] them a message that they shouldn't be doing this and ignoring the[ir] responsibility," appellants did not object to those comments or to any other portion of Acuna's argument. Therefore, they waived any issue on appeal relating to that. *See Monaco*, 196 Ariz. 299, ¶ 16, 995 P.2d at 741.

¶38 Appellants also argue "[t]he jury's determination of $200,000 in damages—more than ten times the amount of actual damages—is clearly excessive." We disagree. Acuna, who was twenty years old and physically active at the time of the accident, injured his left shoulder in the collision. He is left-handed. The shoulder injury required cortisone injections, two courses of physical therapy, and ultimately, arthroscopic surgery. According to his treating physician, Acuna sustained a permanent injury to his shoulder with a residual impairment rating of five percent of the whole person. The physician further testified that Acuna probably will continue to have left shoulder symptoms, including inflammation and pain when he engages in activity requiring overhead and repetitive motions involving the shoulder. At the time of the accident, Acuna was on course to become a teacher, and he testified that writing on a blackboard caused pain in his shoulder. He also testified that his shoulder pain affected his ability to engage in certain sports.

¶39        Based on this record, we cannot say the evidence was insufficient to support the jury's damage award.  The verdict was not so excessive as to shock the conscience or to suggest passion or prejudice.  *See Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 136, 907 P.2d 506, 522 (App. 1995) (when trial court has refused to interfere in jury's determination of damages, appellate court will interpose its own judgment only if convinced that verdict is so excessive as to suggest it was based on passion or prejudice); *see also Sheppard v. Crow-Barker Paul No. 1 Ltd. P'ship*, 192 Ariz. 539, ¶ 53, 968 P.2d 612, 622 (App. 1998); *Cervantes v. Rijlaarsdam*, 190 Ariz. 396, 402, 949 P.2d 56, 62 (App. 1997).  Nor can we say the damage award clearly would have been less had the trial court granted appellants' motion for JMOL on Acuna's negligent entrustment claim.[13]  In sum, we have no basis for overturning or disturbing the damage award.

---

[13]We made this same statement in our original opinion in this case, and appellants neither moved for reconsideration on that point nor challenged it in their response to Acuna's motion.  In addition, in their opening brief appellants merely stated, summarily and without citing any authority, that the excessive verdict "clearly stem[med] from the admission of post-accident bad conduct that should have been excluded, and not from the evidence of damages."  Appellants made that identical assertion in their motion for new trial below and did not appeal from the trial court's denial of that motion.  *See* n.4, *supra*.

Nonetheless, we acknowledge that the overall complexion of this case certainly was colored by Acuna's persistent, vigorous pursuit of his negligent entrustment claim and that the jury's damage award *possibly* was influenced by all the evidence and argument on that claim.  But appellants never addressed the legal standard that might apply in determining whether that claim so infected the trial and affected the damage award that the award cannot stand against Kroack, entitling him to a new trial on the issue of damages.  Accordingly, we have no basis for revisiting that issue when it has never been adequately briefed, developed, or argued, and when appellants have not appealed from the trial court's denial of their motion for a new trial.  *See Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004) (when issues and arguments are raised for first time at oral argument on appeal, they generally "are untimely and deemed waived"); *Brown v. U.S. Fid. & Guar. Co.*, 194

## CONCLUSION AND DISPOSITION

¶40 Having vacated that portion of the judgment that imposed liability against Hampton based on Acuna's legally deficient negligent entrustment claim, we are now left with thirty percent of the fault unaccounted for. Arizona law, however, requires a trier's fault allocation in each action to total one hundred percent.[14] *See Piner v. Superior Court*, 192 Ariz. 182, ¶¶ 32-33, 962 P.2d 909, 917 (1998) (illustrating that allocation of fault under A.R.S. § 12-2506 must total one hundred percent); *see also Grandstaff v. Hawks*, 36 S.W.3d 482, 494-95 (Tenn. Ct. App. 2000) (in comparative fault jurisdiction, jury should allocate percentages of fault totaling one hundred percent among negligent parties).

¶41 As Acuna points out, defendant Kroack admitted fault, appellants never alleged any comparative fault against Acuna or anyone else, and no valid basis exists for vacating the jury's damage award. Accordingly, Acuna argues, the thirty percent of fault allocated to Hampton must now be reallocated to Kroack, rendering him fully and solely liable for the $200,000 judgment. We are constrained to agree.

¶42 Pursuant to A.R.S. § 12-2103(A), an appellate court

---

Ariz. 85, ¶ 50, 977 P.2d 807, 815 (App. 1994) (rejecting assertion that "is wholly without supporting argument or citation of authority").

[14]As the trial court instructed the jury, without objection, "the total [of all fault] has to add up to a hundred percent." Appellants do not argue that Arizona law permits a result in which less than one hundred percent of the fault is allocated or accounted for. Nor did appellants request that result on appeal.

may affirm, reverse or modify a judgment or order appealed from, and may render such judgment or order as the court below should have rendered, or may remand the action to the court below with directions to render such judgment or order, or may direct that a new trial or other proceedings be had, as justice may require, accompanying the mandate with a copy of its opinion.[15]

Although appellants acknowledge this court's authority under § 12-2103(A) to modify a judgment, they contend Acuna actually, and improperly, seeks "an additur, not simply a modification," of the judgment. In addition, appellants argue, "Acuna is essentially requesting a new trial as to comparative liability only," and "the court should rarely permit a litigant to select for retrial the issues decided against him and to treat those decided in his favor as settled." Although we find these arguments somewhat persuasive, we ultimately must reject them.

¶43 Contrary to appellants' contention, Acuna does not technically seek an "additur" or a "new trial as to comparative liability only." *See* Ariz. R. Civ. P. 59(a), (i), 16 A.R.S., Pt. 2. But he does seek a modification of the judgment against Kroack based on a reallocation of fault. In many circumstances, this would infringe on the legislature's

[15]Although the statute refers to "[t]he supreme court," it presumably applies as well to the court of appeals inasmuch as the statute was enacted long before the creation of this court. *See Dolph v. Cortez*, 8 Ariz. App. 429, 430, 446 P.2d 939, 940 (1968) (when relief sought on appeal "is not of the type for which further proceedings in the trial court will be necessary, . . . it is within the power of this court to modify the judgment"); *cf. Compass Realty & Inv. Corp. v. A A Refrigeration & Heating, Inc.*, 21 Ariz. App. 214, 217, 517 P.2d 1107, 1110 (1974) (awarding damages for frivolous appeal under A.R.S. § 12-2106, even though statute referred only to "the supreme court"). We also note that, pursuant to A.R.S. § 12-120.21(A)(3), this court has jurisdiction to issue "orders necessary and proper to the complete exercise of [our] appellate jurisdiction."

directive that "the trier of fact," not an appellate court, shall "assess[] . . . percentages of fault" and shall "determine[] and apportion[] [the relative degrees of fault of all parties and nonparties] as a whole at one time." A.R.S. § 12-2506(B), (C); *see also Bridgestone/Firestone N. Am. Tire L.L.C. v. Naranjo*, 206 Ariz. 447, ¶ 26, 79 P.3d 1206, 1212 (App. 2003) ("At a minimum, the legislature apparently intended, if not required, '*the trier of fact*' to determine and apportion 'as a whole *at one time*' the fault of all possible tortfeasors, whether named or not named as parties.") (emphasis in *Bridgestone/Firestone*), *quoting* § 12-2506(C); *cf. Hutcherson*, 192 Ariz. 51, ¶ 21, 961 P.2d at 453 ("jurors are capable of evaluating degrees of fault, and the statute reflects our legislature's agreement").

**¶44** Moreover, "in Arizona, 'each tortfeasor [is] responsible for paying for his or her percentage of fault *and no more.*'" *Bridgestone/Firestone*, 206 Ariz. 447, ¶ 7, 79 P.3d at 1208 (alteration in *Bridgestone/Firestone*), *quoting Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991); *see also Larsen v. Nissan Motor Corp.*, 194 Ariz. 142, ¶ 5, 978 P.2d 119, 121 (App. 1998) (under UCATA, "'each tortfeasor in a personal injury action is liable only for his or her share of fault'"), *quoting Sanchez v. City of Tucson*, 191 Ariz. 128, 133, 953 P.2d 168, 173 (1998). Because allocation of fault is within the trier of fact's domain, and because a defendant is only liable for his or her share of fault, Acuna's request to shift the jury's allocation of thirty percent of the fault against Hampton to Kroack and thereby hold him liable for one hundred percent of the verdict arguably conflicts with those principles.

¶45 But, under the unique circumstances and procedural posture of this case, we find no legal impediment to Acuna's proposed solution. Appellants consistently admitted that Kroack was at fault for the accident and Acuna's injuries; appellants never suggested Acuna was at fault in any way; there are no other defendants or nonparties against whom fault was urged or may be allocated; and, as noted earlier, the record does not clearly show, nor did appellants persuasively argue or establish with appropriate authority, that the jury's damage award probably was influenced by the trial court's erroneous submission to the jury of Acuna's negligent entrustment claim against Hampton.

¶46 For all of the foregoing reasons, the judgment's award of damages in favor of Acuna is affirmed, but that portion of the judgment apportioning thirty percent of the liability against Hampton is vacated. Because we have no basis for disturbing the damage award, and because Kroack admitted fault and alleged no fault against Acuna or anyone else, the apportionment of liability against Kroack is modified to total one hundred percent. Accordingly, the case is remanded to the trial court with directions to enter judgment in the amount of $200,000, excluding any recoverable costs and fees, in favor of Acuna and against defendant Kroack.

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Presiding Judge

_____
WILLIAM E. DRUKE, Judge*

*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed December 6, 2005.