NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FREDDIE D. RATLIFF, *Plaintiff/Appellee,*

*v.*

THANES D. VANIG, et al., *Defendants/Appellants.*

No. 1 CA-CV 24-0208

FILED 03-20-2025

Appeal from the Superior Court in Maricopa County
No.  CV2019-051672
The Honorable John L. Blanchard, Judge

**AFFIRMED**

COUNSEL

Jeffrey L. Victor PC, Scottsdale
By Jeffrey L. Victor PC
*Counsel for Plaintiff/Appellee*

Jones Skelton & Hochuli PLC, Phoenix
By Cristina M. Chait, Cory E. Tyszka, Eileen Dennis GilBride
*Counsel for Defendant/Appellant*

———————————————

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge David D. Weinzweig joined.

———————————————

**C A T L E T T**, Judge:

¶1        Dr. Thanes D. Vanig ("Dr. Vanig") and Spectrum Medical Group, PC (collectively, "Appellants") appeal the superior court's denial of their renewed motion for judgment as a matter of law and their motion for a new trial. Appellants argue the record lacks sufficient evidence that Dr. Vanig caused injury to Freddie Ratliff ("Ratliff"). Appellants also argue they were denied a fair trial due to various other errors. Because there was sufficient evidence for a jury to conclude Dr. Vanig caused Ratliff's injury and Appellants have shown no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Ratliff lives with HIV, along with myriad other conditions. Dr. Vanig works at Spectrum Medical Group, PC as an internal medicine physician specializing in HIV medicine. Dr. Vanig was Ratliff's primary care physician ("PCP") from 1999 to 2017. In May 2017, Ratliff saw Dr. Mishra, a colorectal surgeon at the Mayo Clinic, for a boil that persisted even after taking antibiotics Dr. Vanig prescribed. During that appointment, Dr. Mishra noted that Ratliff had abnormal creatinine levels and protein in his urine—both signs of kidney failure.

¶3        Dr. Mishra referred Ratliff to Dr. Thomas, a nephrologist at the Mayo Clinic, to schedule a kidney biopsy and evaluate Ratliff's kidneys. Dr. Mishra also referred him to Dr. Orenstein, an infectious disease physician at the Mayo Clinic, to monitor his HIV. Dr. Orenstein found Ratliff had high blood pressure, lower extremity edema, and an elevated level of protein in his urine (also known as proteinuria). Ratliff underwent a biopsy before seeing Dr Thomas. After analyzing the biopsy, Dr. Thomas concluded that Ratliff had secondary focal segmental glomerulosclerosis ("FSGS"), which causes nephrotic syndrome. In other words, the biopsy showed scarring to the part of the kidney responsible for filtering waste, resulting in excess protein in the urine.

2

¶4          In May 2019, Ratliff sued Appellants alleging they failed to properly treat his hypertension and failed to properly evaluate his nephrotic-range proteinuria. Ratliff also claimed that Appellants failed to appropriately refer him to a nephrologist. He alleged that, due to Appellants' negligence, Ratliff developed kidney toxicity and nephrotic syndrome and required a kidney transplant, and that he sustained a diminished life expectancy.

¶5          Before trial, Ratliff moved to preclude Appellants from impeaching Dr. Cascone, his standard of care and causation expert, based on Dr. Cascone's prior substance abuse and medical leave from 2009 to 2012. Appellants opposed the motion, arguing that Dr. Cascone's poor memory of the events around the time of his licensing issues went "to the weight and credibility of his memory[.]" The court granted Ratliff's motion, reasoning that Dr. Cascone's substance abuse was irrelevant and "[a]ny probative value . . . [was] substantially outweighed by the danger of unfair prejudice." The court noted, however, that Dr. Cascone's absence from the medical profession during the relevant time was "fair game for cross-examination."

¶6          In his opening statement, Ratliff showed the jury portions of Dr. Vanig's deposition testimony. Appellants objected. The court overruled the objection and Ratliff continued to show the transcripts. The following day, the court acknowledged that Appellants' objection was appropriate and offered to give a curative instruction to the jury. Appellants instead asked for a mistrial, which the court denied. The next morning, the court instructed the jury as follows:

> During the opening statements on Tuesday morning, counsel for plaintiff displayed some deposition transcripts on the screen, you may remember, in his opening statement presentation. Counsel for defendant objected to that. The Court is instructing you to disregard those transcripts, not give them any weight, and rely instead on the testimony you hear in Court by a live witness or deposition testimony that's read in Court. You are to disregard those deposition transcripts that were shown to you on the screen.

¶7          At trial, Ratliff testified that Dr. Vanig never told him that he had hypertension or proteinuria. Dr. Cascone testified that Ratliff's charts from Dr. Vanig's practice showed "a massive amount of proteinuria" in February 2017 and untreated hypertension dating back to August 2013. Dr. Cascone stressed that the charts showed protein in Ratliff's urine thirty

times more than the upper acceptable limit and characterized the situation as a "five alarm fire." Dr. Cascone opined that a reasonable and prudent physician whose patient exhibited high proteinuria and hypertension would immediately "reduce the insult to the kidney" by consulting a nephrologist, prescribing blood pressure medication, and obtaining a kidney biopsy. He ultimately testified that Appellants' failure to treat Ratliff "directly caused the kidney failure." Dr. Cascone specified that "[t]he uncontrolled hypertension was a significant contributing factor to [Ratliff's] kidney disease. It was one of the causes of that." He also testified that there are "clinical causes, such as uncontrolled hypertension" that cause FSGS.

¶8            Ratliff planned to call his friend Robin Burgess ("Burgess") to testify about Ratliff's health deterioration "from a layperson's standpoint." Appellants asked the court to preclude Burgess from testifying about her occupation as a medical malpractice defense attorney, arguing that such testimony would mislead the jury and "improperly suggest that [Ratliff's] claim has merit." Before she testified, the court ruled that Ratliff could elicit information on the nature of Burgess' practice. It noted that defense counsel could use cross-examination to dispel any notion that Burgess believed Ratliff's claim was meritorious by confirming she had limited access to the facts of the case. On direct examination, Burgess testified that she works as an attorney "representing health care providers" but she did not say whether she encouraged Ratliff to pursue his claim. A juror tried to ask Burgess whether she "discuss[ed] with [Ratliff] bringing this suit against Dr. Vanig," but the court declined to ask the question.

¶9            After Burgess testified, defense counsel complained to the court that, while chatting with Burgess before her testimony, she said "I looked at Dr. Vanig's records and I encouraged [Ratliff] to look into this." Defense counsel also argued that the juror's question demonstrated how Burgess' testimony about her occupation was prejudicial. Appellants again asked for a mistrial, which the court denied.

¶10          The jury returned a verdict for Ratliff for $1.1 million; it apportioned 60% of the fault to Appellants and 40% to Ratliff. The court entered judgment for Ratliff and Appellants timely renewed their motion for judgment as a matter of law and moved for a new trial. The court denied both motions because, in its view, the evidence presented at trial supported the verdict and no alleged error justified a new trial.

¶11          Appellants timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1), (A)(5)(a).

**DISCUSSION**

## I. Judgment as a Matter of Law

**¶12** Appellants first argue the record lacks evidence that Dr. Vanig committed an act or omission causing Ratliff's secondary FSGS—the cause of his nephrotic syndrome. We view the evidence "in a light most favorable to upholding the jury verdict[.]" *Salica v. Tucson Heart Hosp.—Carondelet, L.L.C.*, 224 Ariz. 414, 417–18 ¶ 11 (App. 2010) (quoting *Acuna v. Kroak*, 212 Ariz. 104, 111 ¶ 42 (App. 2006)). We review the denial of judgment as a matter of law *de novo*, affirming if substantial evidence supports the claim. *Id.* Substantial evidence is "any relevant evidence from which a reasonable mind might draw a conclusion." *Mealey v. Arndt*, 206 Ariz. 218, 221 ¶ 12 (App. 2003) (citation omitted).

**¶13** To succeed on a medical malpractice claim, a plaintiff must prove that (1) "'[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances,' and (2) '[s]uch failure was a proximate cause of the injury.'" *Sampson v. Surgery Ctr. of Peoria, LLC*, 251 Ariz. 308, 311 ¶ 14 (2021) (quoting A.R.S. § 12-563). "[T]he standard of care normally must be established by expert medical testimony" and the expert must "testify as to *probable* causes of the plaintiff's injury." *Id.* at ¶ 16 (citations omitted).

**¶14** Here, Ratliff provided substantial evidence to satisfy each element of his malpractice claim. Dr. Cascone opined that Appellants fell below the standard of care by failing to "reduce the insult to the kidney" upon learning of Ratliff's very high proteinuria and hypertension. He stated that a reasonable and prudent health care professional would have consulted a nephrologist, prescribed blood pressure medications, and obtained a kidney biopsy. On causation, Dr. Cascone testified that Appellants' breaches "directly caused the kidney failure" and said "[t]he uncontrolled hypertension was a significant contributing factor to [Ratliff's] kidney disease. It was one of the causes of that." Dr. Cascone further testified that one clinical cause of FSGS is "uncontrolled hypertension." Based on that testimony, a reasonable juror could conclude that Dr. Vanig's failure to treat Ratliff and failure to refer him to a nephrologist caused his kidney injury.

**¶15** The crux of Appellants' argument is that Ratliff needed to prove hypertension caused his secondary FSGS, in turn, resulting in kidney

failure. They claim that their expert "was the only expert who testified to the cause of [Ratliff's] FSGS." At trial, Appellants' expert testified that the pattern of scarring looked like an "HIV-induced injury" and stated that hypertension could not cause the FSGS seen on Ratliff's kidney. But, "[w]here there is contradictory, but reliable, expert testimony, it is the province of the jury to determine [its] weight and credibility[.]" *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 359 ¶ 24 (App. 2014) (quoting Ariz. R. Evid. 702 cmt. to 2012 amend.). On appeal, we will not re-weigh dueling expert testimony, thereby substituting our judgment for the jury's, which is essentially what Appellants' request. Once there was substantial evidence supporting causation, the ultimate choice among experts belonged to the jury. The superior court properly denied Appellants' renewed motion for judgment as a matter of law. *See id.*

## II. New Trial

**¶16** Appellants next argue that the court made various prejudicial errors, which denied them a fair trial. We review the denial of a motion for a new trial for an abuse of discretion. *Spring v. Bradford*, 243 Ariz. 167, 170 ¶ 11 (2017). "A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion, it reaches a conclusion without considering the evidence, [or makes] some other substantial error of law[.]" *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50 ¶ 27 (App. 2007).

### A. Expert Witness Impeachment

**¶17** Appellants argue the superior court erred by precluding certain impeachment of Ratliff's only standard of care and causation witness, Dr. Cascone. They argue that Dr. Cascone's credibility was at issue and the superior court violated Arizona Rule of Evidence 608(b) by precluding them from asking him questions about instances of misconduct probative of his character for untruthfulness. Ratliff argues the superior court properly exercised its discretion under Rule 403 in determining the scope of cross-examination.

**¶18** In support of their argument, Appellants cite an unpublished Ohio Court of Appeals decision in a case where Dr. Cascone testified as an expert witness and the plaintiff moved to exclude evidence of his substance abuse and professional disciplinary history. *Horseman v. Mercy Health-Lorain Hosp.*, 2024 WL 1717358 at *1 ¶ 6 (Ohio Ct. App. Apr. 22, 2024). The defendant opposed the motion asserting that Dr. Cascone's professional probation stemmed from fraud and dishonesty. *Id.* at *2 ¶ 7. The defendant argued that such evidence related to Dr. Cascone's credibility and character

6

for truthfulness and was admissible under Ohio Rule of Evidence 608(b). *Id.* The trial court granted the plaintiff's motion without explaining its reasoning. *Id.* at ¶ 8. The Ohio Court of Appeals concluded the trial court "committed reversible error by precluding defense counsel from cross-examining Dr. Cascone regarding his past licensure issues." *Id.* at *9 ¶ 45. The court explained that "[w]hile drug use does not necessarily affect a witness's character for truthfulness, the probation of an expert witness's medical license *due to deceptive and/or dishonest acts* is probative of that witness's character for truthfulness and is admissible under Evid. R. 608(b)." *Id.* at *9 ¶ 44 (emphasis added).

**¶19** Our situation is distinguishable from *Horseman*. Unlike there, when Ratliff moved to preclude Appellants from cross-examining Dr. Cascone about his prior substance abuse and probationary status, Appellants did not respond by showing that Dr. Cascone was previously guilty of fraudulent prescription writing practices. Instead, Appellants attached a printout from the Missouri Division of Professional Registration's website summarizing Dr. Cascone's disciplinary history. The printout said that, starting in 2009, Dr. Cascone was on probation "due to disciplinary action taken by the Missouri Bureau of Narcotic and Dangerous Drugs (BNDD) for violation of state controlled substance laws." The printout did not explain what controlled substance laws Dr. Cascone had violated. The printout also said that, starting in 2010, Dr. Cascone was again put on probation for violating the terms of his prior probation by (1) not timely renewing his license, (2) not completing required continuing education, and (3) using and possessing cocaine, methamphetamine, and prescription drugs without a valid prescription. Without additional information from Appellants, that summary was insufficient to alert the superior court that fraudulent prescription practices were at issue.

**¶20** Also unlike in *Horseman*, Appellants did not argue that Dr. Cascone's substance abuse and probation issues were admissible under Rule 608(b). Instead, Appellants couched those issues as impacting, in a general sense, the weight and credibility of Dr. Cascone's testimony, without arguing that they showed Dr. Cascone had a character for untruthfulness under Rule 608. Appellants, for example, asserted that the issues fell "squarely within the time period of Dr. Cascone's criticisms of Dr. Vanig's care" and he had a poor memory of events at that time thus affecting "the weight and credibility to be given to Dr. Cascone's testimony." The superior court granted the motion after balancing the Rule 403 factors, but it still allowed Appellants to cross-examine Dr. Cascone on his "absence from the profession during a relevant time-period[.]"

7

¶21            Before Dr. Cascone testified, Appellants again raised the cross-examination issue, but they still did not assert that their questions would involve fraudulent prescription practices or that they would test Dr. Cascone's character for untruthfulness.  The court declined to change its ruling.

¶22            Only on appeal have Appellants couched their argument in terms of fraudulent prescription practices under Rule 608(b).  But the superior court cannot be faulted for considering only the substance abuse and probation issues and only balancing relevancy and prejudice under Rule 403, when Appellants did not raise fraudulent prescription practices or rely on Rule 608(b). *See Odom v. Farmers Ins. Co.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007) ("Generally, arguments raised for the first time on appeal are untimely and deemed waived."). Ultimately, the superior court did not abuse its discretion in conducting its Rule 403 balancing and allowing Appellants to cross-examine Dr. Cascone on his absence from medicine. *See Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 403 ¶ 26 (App. 2000).  Appellants have not shown reversible error on this issue.

### B.     Lay Damages Witness

¶23            Appellants next contend that the court erred by permitting Burgess, Ratliff's lay damages witness, to testify that she "represent[s] health care providers."   Ratliff maintains that eliciting background information, such as employment, from a witness is part of the customary background examination of any fact witness and testimony regarding Burgess' employment was not prejudicial.

¶24            "It is commonly accepted that a person may be examined about his background, occupation and the like for the purpose of aiding the jury to evaluate his testimony and credibility." *State v. Brewer*, 26 Ariz. App 408, 415 (1976) (citation omitted).  As to the prejudicial effect of such testimony, the balancing of Rule 403 factors "is peculiarly a function of trial courts, not appellate courts." *Yauch*, 198 Ariz. at 403 ¶ 26 (citation omitted).

¶25            Here, Appellants claim that testimony regarding Burgess' legal practice would "improperly suggest that [Ratliff's] claim has merit." They also allege that, in a conversation outside the courtroom (and thus outside-the-record), Burgess told defense counsel she reviewed Ratliff's medical records and encouraged him to consider suing Dr. Vanig. According to Appellants, this conversation prevented them from adequately cross-examining Burgess to fend off the implication that Ratliff had a good case.  They also point out that jurors submitted proposed

questions asking whether Burgess represents doctors like Dr. Vanig and whether she discussed suing him with Ratliff—both questions the court declined to ask. *See* Ariz. R. Civ. P. 40(i).

¶26 Ultimately, all the jury heard was that Burgess' practice "involves representing health care providers in a number of different settings." The court did not err in permitting Ratliff to elicit this general background testimony from Burgess, and the off-the-record conversation and unanswered jury questions do not show that the superior court erred. *See Brewer*, 26 Ariz. App. at 415.

## C. Scope of Rebuttal

¶27 During Appellants' closing argument, they briefly discussed Ratliff's damages and argued that it was unclear whether he was on the kidney transplant list because of an incident with Mayo Clinic staff. In rebuttal, Ratliff argued that the incident Appellants discussed was a result of Ratliff's post-traumatic stress disorder and emphasized that his damages are lifelong. Appellants argue that Ratliff discussed "specific damages in rebuttal" and by doing so precluded the defense from responding.

¶28 To support their position, Appellants cite *Hubbard v. Matlock*, 24 Ariz. App. 554, 556 (1975), which states "[t]he scope of rebuttal is limited to matters discussed by the defendant." But the record shows that Ratliff's discussion of damages listed no specific numbers and contested Appellants' claim regarding the incident with Mayo Clinic staff. Thus, the superior court did not abuse its discretion in permitting Ratliff's rebuttal.

## D. Improper Expert Opinion

¶29 Over Appellants' objection, the superior court allowed Plaintiff to ask his treating physician, Dr. Thomas, to describe the common causes of kidney failure. Appellants argue that the testimony had nothing to do with Dr. Thomas' first-hand observations of Ratliff but instead was an expert opinion given in violation of the one-expert rule.

¶30 A treating physician is typically a fact witness who testifies about observations and opinions obtained when treating a patient. *See State ex rel. Montgomery v. Whitten*, 228 Ariz. 17, 21 ¶ 14 (App. 2011). Appropriate lay physician testimony addresses details of treatment and associated medical records, but discussion of "medical research or literature will typically call for expert, not fact-based, testimony." *Id.* at ¶¶ 15–16. A treating physician may offer "expert opinion testimony without violating the One-Expert Rule when the witness' testimony is based on personal

observations and actions." *McDaniel v. Payson Healthcare Mgmt. Inc.*, 253 Ariz. 250, 255 ¶ 20 (2022).

**¶31** Because Dr. Thomas did not base his testimony on personal observations of Ratliff, he gave an expert opinion when he stated, "The most common cause [of kidney dysfunction or failure] is diabetes in the United States and probably the second most common cause would be high blood pressure." *See McDaniel*, 253 Ariz. at 255 ¶ 20. Although he later discussed his treatment plan for Ratliff's hypertension, his opinion on the common causes of kidney dysfunction was not sufficiently connected to his treatment of Ratliff to be permissible. *See id.*; *Whitten*, 228 Ariz. at 21 ¶ 16. Appellants, however, have not shown that Dr. Thomas's brief and generalized testimony about the causes of kidney dysfunction affected their substantial rights. Allowing Dr. Thomas to provide that brief testimony is not grounds for a new trial because, as we have explained, Dr. Cascone's causation testimony was itself sufficient for the jury to find for Ratliff. Ariz. R. Civ. P. 61 ("[A]n error in admitting or excluding evidence . . . is not grounds for a new trial" unless the error "affect[s] any party's substantial rights.").

**¶32** Appellants also argue Ratliff improperly relied on Dr. Thomas's anticipated testimony in his opening argument, thereby compounding the error. But Appellants did not object when Ratliff previewed what Dr. Thomas would say, thereby depriving the superior court of an opportunity to address the issue in advance. And, on appeal, Appellants claim only that the opening argument statement "compounded the error" without explaining how.

## E. Use of Deposition Transcripts in Opening Statement

**¶33** Appellants argue that the curative instruction given after Ratliff showed deposition transcripts in his opening statement did not cure the error. The superior court has discretion in controlling the conduct of a trial and may elect to give a curative instruction if counsel makes objectionable remarks during opening arguments. *Zuluaga v. Bashas', Inc.*, 242 Ariz. 205, 211 ¶ 18 (App. 2017). The instruction must accurately reflect the law, and we presume the jury then follows the curative instruction. *State v. Prince*, 204 Ariz. 156, 158 ¶ 9 (2003); *State v. Dann*, 205 Ariz. 557, 571 ¶ 48 (2003).

**¶34** Here, the curative instruction noted that Appellants objected to the use of the transcripts and correctly instructed the jury to give the transcripts no weight. *See* Ariz. R. Civ. P. 32(c) (deposition testimony must

be presented in non-transcript form). Appellants do not argue that the curative instruction was legally incorrect or otherwise erroneous. Rather, they argue that, as a practical matter, the instruction could not have cured the error because two days passed between the error and the curative instruction. Appellants' speculation is insufficient to overcome the presumption that the jury complied with the instruction. *See State v. Gallegos*, 178 Ariz. 1, 10–11 (1994).

### F. Summary of Expert Opinions in Opening Statement

**¶35** Appellants lastly argue that the court improperly precluded them from summarizing their own experts' opinions during their opening argument. During opening arguments, Appellants' counsel listed multiple doctors and planned to preview their collective opinion regarding the cause of Ratliff's kidney injury. Ratliff objected, citing the one-expert rule, and argued that Appellants may only use one expert on causation. After a brief bench conference, Appellants' counsel offered to move on from the topic. Thus, the court did not preclude Appellants from making any arguments during their opening statement and committed no error.

### ATTORNEY FEES

**¶36** Ratliff requests an award of costs, attorney fees, and sanctions under Arizona Rule of Civil Appellate Procedure 25 and A.R.S. §§ 12-341, 12-349, and 12-350, arguing this appeal is frivolous and brought without substantial justification. In the exercise of our discretion, we deny Ratliff's request for attorney fees and sanctions. As the prevailing party, we award Ratliff his costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶37** Because there was sufficient evidence for a jury to conclude Dr. Vanig caused Ratliff's injury and Appellants have shown no reversible error, we affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR